IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned January 17, 2014

## CANDACE WATSON v. CITY OF JACKSON

**Interlocutory Appeal from the Circuit Court for Madison County**
**No. CO8343      Roy B. Morgan, Judge**

---

**No.  W2014-00100-COA-T10B-CV - Filed February 13, 2014**

---

This accelerated interlocutory appeal pursuant to Tennessee Supreme Court Rule 10B results from the trial court's denial of a post-trial recusal motion. The Appellant filed a motion seeking recusal of the trial judge from presiding over the preparation of the record for her appeal of the substantive issues in the case. The trial judge denied the motion by written order, making specific findings of fact. The Appellant appeals. Discerning no evidence that would lead a reasonable person to question the trial judge's impartiality, we affirm the denial of Appellant's recusal motion.

**Tenn. S. Ct. R. 10B Interlocutory Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P. J., W.S., and DAVID R. FARMER, J., joined.

Candace Watson, Jackson, Tennessee, Pro Se.

Lewis L. Cobb, Jackson, Tennessee, for the appellee, City of Jackson.

### OPINION

### Background

On November 17, 2008, Plaintiff/Appellant Candace Watson filed a complaint against the Defendant/Appellee City of Jackson ("the City") for injuries she allegedly sustained while working in a City building, Ms. Watson was injured when she slipped and fell on a recently waxed floor. Ms. Watson alleged that the fall caused her neck, back, leg, and arm pain, which continued at the time of the filing of the complaint.

The City filed an answer on January 16, 2009, specifically raising the defenses of contributory negligence and comparative fault. The parties then engaged in discovery, including the propounding of interrogatories and the taking of depositions.[1] On August 10, 2013, the trial court entered a scheduling order requiring that all discovery be completed by February 28, 2013 and that a trial would be set for March 7, 2013. On September 10, 2012, the parties agreed that Ms. Watson would undergo an independent medical evaluation.

On December 27, 2012, the City filed a Motion for Summary Judgment, arguing that the undisputed evidence showed that there was no hazardous condition on the floor, until after Ms. Watson left work on the day of the alleged incident. Specifically, the City argued that Ms. Watson had alleged that a hazardous condition existed because City staff was waxing the floor prior to her departure; however, deposition testimony allegedly undisputedly showed that no waxing took place until after Ms. Watson left for the day. The City also argued that the evidence showed that if there was any negligence on the part of the City, the evidence nevertheless undisputedly showed that the negligence of Ms. Watson made her more than fifty percent responsible for her injuries, precluding recovery. Ms. Watson filed a response to the Motion for Summary Judgment on January 23, 2013. In her response, Ms. Watson denied that the undisputed facts entitled the City to judgment in its favor. On February 15, 2013, the trial court denied the City's Motion for Summary Judgment, finding a dispute as to the material facts in the case.

The parties entered an amended agreed scheduling order on February 12, 2013. Through the scheduling order, the parties set the case for trial on March 7th and 8th, 2013. The trial court and counsel for both parties signed the scheduling order. On March 1, 2013, Ms. Watson filed a motion to be allowed to use the transcripts from the depositions of her treating physicians at trial in lieu of live testimony.

A trial was held on March 8, 2013. Ms. Watson testified on her own behalf. Two City workers who were alleged to have waxed the floor on the day in question testified on behalf of the City. Both parties agreed that the medical testimony would be submitted through deposition, for the trial court to read after the conclusion of the live proof. However, at the conclusion of trial, the trial court determined that, even taking all of Ms. Watson's testimony regarding her injury and its causation as true, Ms. Watson's own testimony showed that she was more than fifty percent (50%) at fault for her injuries. Thus, the trial court concluded that Ms. Watson could not recover.

---

[1] During discovery, the parties had a dispute over Ms. Watson's counsel's refusal to proceed with a scheduled deposition because his client was not present. The trial court eventually sanctioned Ms. Watson for the refusal to conduct the depositions and ordered her to compensate the two witnesses for their lost wages from having to leave work to participate in the depositions that did not take place.

Before the trial court entered an order on its judgment, the City filed a Motion seeking discretionary costs. In addition, on April 15, 2013, Ms. Watson, acting *pro se*, filed a motion captioned "Emergency Motion to Dismiss Ineffective Assistance of Counsel, Dr. Bede Anyanwu." The Motion asked that the Court allow Ms. Watson to dismiss Dr. Anyanwu as her counsel of record. Ms. Watson attached to her Motion an email from Dr. Anyanwu's office, stating:

> Our office has been trying to get in contact with you concerning the trail [sic] date set for Tomorrow and Friday the 7th and 8th. Please get in contact with the office as soon as possible, your presence is mandatory. Also if [you] have changed your phone number please provide us with the most recent one. Thanks for your prompt assistance in this matter.

The email was sent on March 6, 2013. Another email, sent on the same day, advised Ms. Watson that the trial would be held only on March 8, 2013.

On April 16, 2013, Ms. Watson, acting *pro se*, filed a Motion opposing the City's request for discretionary costs. Ms. Watson argued that to assess discretionary costs against her "is basically a slap in the face." On the same day, Ms. Watson filed another Motion to dismiss her trial counsel, citing additional reasons for the dismissal that are not relevant to this appeal. Despite this Motion, Ms. Watson's trial counsel filed his own response to the City's motion for discretionary costs, arguing that because Ms. Watson and the City were found to be equally at fault, there was no prevailing party to whom discretionary costs could be awarded.

On April 29, 2013, Ms. Watson, acting *pro se*, filed a motion captioned: "Motion to Object Defective Verdict," arguing that the trial court did not "apply the law accordingly to Rule 2.1 Code of Judicial Conduct." Specifically, Ms. Watson took issue with the trial court's ruling that she was on notice that the floors were slippery, when testimony showed that no signs were posted warning of the slippery floors. Ms. Watson also raised, for the first time, an issue regarding the Americans with Disabilities Act. On May 7, 2013, Ms. Watson, again acting *pro se*, filed a new motion captioned: "Motion to Open and Amend Judgment and/or Grant New Trial." In this Motion, Ms. Watson argued that the trial court's ruling violated several procedural and substantive rules, including the Americans with Disabilities Act, several rules of evidence and procedure, Rule 2.9 of the Judicial Code of Conduct,[2] and

_____

[2] From our review of the record, we conclude that Ms. Watson is referring to Tennessee Supreme Court Rule 10, Section 2.9 concerning *ex parte* communications between a judge and a third-party. Section

(continued...)

the Fourteenth Amendment of the United States Constitution. Ms. Watson also noted that she had obtained newly discovered evidence of a witness to her departure from the City building on the day in question. In her motion, Ms. Watson noted that transcripts of the trial court proceedings were being prepared.

On May 14, 2013, the trial court entered an order dismissing Ms. Watson's Motion to dismiss her trial counsel. The trial court noted that Ms. Watson did "not need permission of the Court to dismiss her privately retained legal counsel in a civil action." The trial court noted, however, that Ms. Watson "acknowledges her responsibility as a Pro Se litigant if she does proceed without legal counsel . . . ."[3] Also on May 14, 2013, the trial entered its final judgment in favor of the City. The trial court also entered an order awarding the City discretionary costs.

On May 29, 2013, the City filed a response to Ms. Watson's Motion objecting to the trial court's "verdict." The City denied the allegations contained therein, and noted that Ms. Watson had not raised the Americans with Disabilities Act in her complaint. On the same day, the City also filed a response to Ms. Watson's "Motion to Amend Verdict," denying the allegations contained therein. On June 7, 2013, the trial court denied Ms. Watson's "Motion to Open and Amend Judgment and/or Grant New Trial."

On June 10, 2013, Ms. Watson filed a Notice of Appeal of the trial court's ruling. The trial court certified that Ms. Watson could proceed as indigent on her appeal. On August 2, 2013, Ms. Watson filed a Motion in this Court seeking additional time to file the transcripts from the trial court. The Motion was accompanied by the affidavit of the court reporter. On August 26, 2013, this Court granted Ms. Watson's Motion and ordered her to file the transcripts by October 1, 2013. On September 16, 2013, this Court modified its order to allow Ms. Watson to file either "a full transcript of the trial court proceedings, submitting a Statement of the Evidence to the trial court, or filing a notice of no transcript or Statement of Evidence" by October 15, 2013.

---

[2](...continued)
2.9 states, in relevant part:

> A judge shall not initiate, permit, or consider *ex parte* communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter . . . .

[3] After the trial court's order dismissing Ms. Watson's motion to dismiss her trial counsel, Ms. Watson proceeded *pro se* in the trial court. Ms. Watson continues to proceed *pro se* in this appeal.

On October 16, 2013, Ms. Watson filed a document captioned "Statement of Proceedings" with this Court, purporting to be a Statement of the Evidence presented in the trial court. On October 22, 2013, this Court filed an order directing the Clerk of the Court of Appeals to transmit Ms. Watson' Statement of Proceedings to the trial court clerk for review pursuant to Rule 24 of the Tennessee Rules of Appellate Procedure. On November 12, 2013, the City filed a Motion to Strike Ms. Watson's Statement of Proceedings. According to the City's Motion, Ms. Watson's Statement of Proceedings was not a fair and accurate depiction of the events in the trial court because it contained Ms. Watson's own internal commentary about the trial proceedings and failed to contain any of the exhibits submitted in the trial court. The city further argued that because a court reporter was present for the trial court proceedings, a verbatim transcript was required pursuant to Rule 24 of the Tennessee Rules of Appellate Procedure, discussed in detail *infra*. A copy of the purported verbatim transcript of the proceedings was filed in the trial court. The transcript contains a notation from the court reporter that the transcript "constitute[s] a true and accurate transcription of the proceedings and evidence introduced in this cause."

On or around November 22, 2013, the trial court entered an order granting the City's Motion to Strike Ms. Watson's Statement of Proceedings. In its order, the trial court stated:

5.      Rule 24 of the Tennessee Rules of Appellate Procedure is controlling on this issue.

6.      The Court recalls that a Court Reporter was present during the trial of this matter[;] therefore[,] a complete transcript could be prepared and filed.

7.      That the Court has reviewed the "Statement of Proceedings . . ." filed by [Ms. Watson] and it is very clear as to the following:

A)      This statement does not convey a fair, accurate and complete account of what transpired with respect to those issues that are the basis of the appeal.

B)      This statement in fact contains some statements/summarizations by [Ms. Watson,] which are just not true and grossly misleading.

C)      The Court made its ruling only after [Ms. Watson]

and [the City] had both rested their case. The Court reviewed the proof and law, made specific findings and announced same in open Court.

D)     The Court prepared and entered on May 14, 2013, a Final Judgment[,] set forth findings of fact and conclusions of law.

E)     [Ms. Watson's] Statement of Proceedings does not comply with Rule 24(b) [of the Tennessee Rules of Appellate Procedure].

It is, THEREFORE, ORDERED, ADJUDGED, and DECREED that [the City's] Motion to Strike is granted and the parties shall timely comply with Rule 24(b) of the Tennessee Rules of Appellate Procedure.

Nearly one month later, on December 20, 2013, Ms. Watson filed a Motion to Recuse the trial judge in this case, Judge Roy B. Morgan. In her Motion, Ms. Watson alleged that the trial court was "biased and prejudiced and allowed harassment against [Ms. Watson] and for further reason that [Ms. Watson] has zero confidence that said judge is able to perform judicial duties impartially due to the fact that he has personal knowledge of the fact in dispute and has an economic interest." Ms. Watson asked that the trial judge be disqualified from all further proceedings. Ms. Watson included a memorandum in support of her Recusal Motion. In her memorandum, Ms. Watson alleged that:

[Ms. Watson] has zero confidence that the honorable judge is able to do so impartially due to the fact that he has personal knowledge of the facts in dispute and has an economic interest. [Ms. Watson] is suing the City of Jackson and feels as if she is literally in dispute with the residents of the City of Jackson and fears she will never receive a fair trial in Madison County/Jackson, Tn.
The Honorable Judge Roy B. Morgan Jr.'s actions and dialogue include, impropriety, integrity, discrimination, incompetence, and impartiality, during and after trial, and are disclosed in the Statement of Proceedings filed October 16, 2013. [Ms. Watson is not confident he will ever approve any of her motions.
Furthermore during trial, [the City] violated the Rules of

-6-

Professional Conduct in which the judge shall report any violations committed by a lawyer. The violations continue to occur which makes me highly doubtful that the judge has reported the misconduct and violations.

In addition, Ms. Watson filed another document entitled "Affidavit of Incompetence, Bias, Prejudice, Impropriety, and Harassment," raising several additional allegations against the trial court, including: (1) that the trial judge failed to properly consider Ms. Watson's discrimination claim; (2) that the trial judge failed to properly notify Ms. Watson of the trial date; (3) that the trial judge failed to provide a reasonable accommodation for Ms. Watson's disability and, instead, acted with an inappropriate demeanor; and (4) that the trial court erroneously struck Ms. Watson's Statement of Proceedings in violation of an order from the Court of Appeals.

On January 3, 2014, the City filed a response to Ms. Watson's Recusal Motion. In the response, the City argued that Ms. Watson's Recusal Motion had no factual basis. The City asked that it be allowed to file a verbatim transcript of the proceedings in the trial court to support its assertions. On January 6, 2014, the trial court entered an order denying Ms. Watson's Recusal Motion. In its order, the trial court stated:

1. That the trial date of March 8, 2013, was agreed upon in open Court on June 22, 2012, by agreement of [Ms. Watson's] counsel and [the City's] counsel, this being over eight (8) months prior to the trial date.

2. [Ms. Watson] retained private counsel, attorney Bede Anyanwu, to represent her in the filing and trial of this case[;] therefore, any agreement by her attorney in open Court as to a trial setting would be constructive notice to [Ms. Watson].

3. That a Scheduling Order was entered on August 10, 2012.

4. That the Court denied [the City's] Motion for Summary Judgment on February 15, 2013, and heard this case on the merits on March 8, 2013.

5. That the Court on March 8, 2013, rendered a decision based on the facts and law as truth and justice dictate in

this case and specific findings of fact and conclusions of law were announced.

6.      That a Final Judgment memorializing the Court['] ruling was entered on May 14, 2013.

7.      That soon after the trial of this case on March 8, 2013, [Ms. Watson] did discharge her attorney, Bede Anyanwu, from any further employment o[r] representation.

8.      That [Ms. Watson] did file a pro-se appeal and this matter is now before [t]he Court of Appeals.

9.      That [t]he Court of Appeals by Order entered October 22, 2013, did direct the Clerk of the Appellate Court to transmit [Ms. Watson's] Pro-se Statement of Proceedings to the Trial Clerk for further proceedings in the trial court.

10.     That [the City] filed a Motion to Strike [Ms. Watson] Pro-Se Statement of Proceedings.

11.     That the Trial Court reviewed Rule 24 of the Tennessee Rules of Appellate Procedure  and reviewed [Ms. Watson's] Pro-Se Statement of Proceedings, after which the Trial Court entered an Order on November 19, 2013, making specific findings of fact as to why [the City's] Motion to Strike should be granted and directing the parties to comply with Rule 24.

12.     That a Court Reporter was present during the entire trial on March 8, 2013, and [the City] has now filed a complete transcript with the Court for purposes of [Ms. Watson's] appeal.

13.     The complete trial transcript has been approved by the Court and any cost issue shall be addressed by the Court of Appeals.

14.     That [Ms. Watson's] Motion to Recuse and Purported

Affidavit does not affirmatively state that the motion is not being presented for any improper purpose such as harassment or to cause unnecessary delay, and the Court noted that the Motion for recusal was filed pro-se by [Ms. Watson], months after the trial of the matter and after the filing of the appeal in this case.

15. This case is now pending with the Court of Appeals and should not require further action by the Trial Court.

16. That the Trial Court has reviewed Supreme Court rule 10b and is entering this Order as required by Section 1.03.

17. This Court has reviewed [Ms. Watson's] claim of incompetence, bias, prejudice, and harassment and the Court further reviewed the contents of [Ms. Watson's] affidavit which makes untrue and unfounded allegations.

18. That the Court finds that [Ms. Watson's] claims for recusal are without a factual basis.

19. That the Pro-Se Motion for Recusal is without merit and should be denied based on the findings made in this Order, which included, the fact that this matter is now before [t]he Court of Appeals and not the Trial Court.

20. That [Ms. Watson], pursuant to Rule 24, Section 2.01, has as a matter of right the opportunity for an accelerated appeal from this Order.

In response to the trial court's order, on January 15, 2014, Ms. Watson filed a Petition in this Court seeking an accelerated appeal of the denial of her Recusal Motion. This appeal concerns only the trial court's order denying Ms. Watson's Recusal Motion.

**Analysis**

As an initial matter, we note that Ms. Watson has proceeded *pro se* throughout the post-trial proceedings in the trial court and on this appeal. It is well settled that *pro se* litigants must comply with the same standards to which lawyers must adhere. As explained by this

Court:

> Parties who decide to represent themselves are entitled to fair and
> equal treatment by the courts. The courts should take into account
> that many pro se litigants have no legal training and little
> familiarity with the judicial system. However, the courts must
> also be mindful of the boundary between fairness to a pro se
> litigant and unfairness to the pro se litigant's adversary. Thus, the
> courts must not excuse pro se litigants from complying with the
> same substantive and procedural rules that represented parties are
> expected to observe.

*Jackson v. Lanphere*, No. M2010-01401-COA-R3-CV, 2011 WL 3566978, at *3 (Tenn. Ct. App. Aug.12, 2011) (quoting *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003)). With the foregoing in mind, we turn to address the procedural and substantive issues in this case.

This case presents an unusual factual situation. Here, a Recusal Motion was filed by Ms. Watson after the substantive portions of the trial were concluded. Thus, upon first inspection it appears that there is nothing further for the trial court to preside over pending resolution of Ms. Watson's appeal. For this reason, the City asks this Court to consolidate Ms. Watson's recusal issue with her appeal from the trial court's substantive decision in this case. From our review of the record, however, it appears that the recusal issue presented in this case concerns the preparation of the record for Ms. Watson's appeal pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure.[4] Resolution of this issue is, therefore, necessary prior to a full and proper adjudication of Ms. Watson's Rule 3 appeal. Thus, we will consider Ms. Watson's recusal petition as an accelerated interlocutory appeal from the denial of a Recusal Motion pursuant to Rule 10B of the Rules of the Tennessee Supreme Court.

As we perceive it, there is one dispositive issue in this case: Whether the trial court should have withdrawn from presiding over the preparation of the record for Ms. Watson's appeal pursuant to Tennessee Supreme Court Rule 10, Section 2.11. Rule 10, Section 2.11 states that:

> A judge shall disqualify himself or herself in any proceeding in
> which the judge's impartiality might reasonably be questioned,

---

[4] Rule 3 of the Tennessee Rules of Appellate Procedure provides, in pertinent part: "In civil actions every final judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Appeals is appealable as of right."

including but not limited to the following circumstances:

> (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.

Tenn. Sup. Ct. R. 10, § 2.11(A). Ms. Watson's appeal of the trial court's substantive ruling is not at issue in this case; this appeal concerns only the trial court's denial of Ms. Watson's Recusal Motion.

## I.

We will begin with certain procedural issues concerning Ms. Watson's Petition for Recusal. Pursuant to Rule 10B of the Rules of the Tennessee Supreme Court, a litigant is entitled to seek disqualification of a trial judge by filing a motion that (1) is supported by an affidavit under oath or a declaration under penalty of perjury by personal knowledge or by other appropriate materials; (2) states, with specificity, all factual and legal grounds supporting disqualification of the judge; and (3) affirmatively states that it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. Tenn. Sup. Ct. R. 10B, § 1.01.

Upon filing of such motion, the judge whose recusal is sought shall either grant or deny the motion in writing. If the motion is denied, the judge shall state in writing the grounds for the denial. Tenn. Sup. Ct. R. 10B, § 1.03. Additionally, if the motion is denied, the movant may file an accelerated interlocutory appeal of the denial. According to Section 2.02 of Rule 10B of the Rules of the Tennessee Supreme Court:

> To effect an accelerated interlocutory appeal as of right from the denial of the motion, a petition for recusal appeal shall be filed in the appropriate appellate court within fifteen days of the trial court's entry of the order. In civil cases, a bond for costs as required by Tenn. R. App. P. 6 shall be filed with the petition. A copy of the petition shall be promptly served on all other parties, and a copy also shall be promptly filed with the trial court clerk.

Tenn. Sup. Ct. R. 10B, § 2.02. The movant is also required to include copies of "any order or opinion and any other parts of the record necessary for determination of the appeal." Tenn. Sup. Ct. R. 10B, § 2.03.

In this case, Ms. Watson's Motion fails in two material respects. First, the trial court found that Ms. Watson failed to recite in her original Recusal Motion that her request for recusal of the trial judge was not being presented for purposes of harassment or delay. *See*

-11-

Tenn. Sup. Ct. R. 10B, § 1.01. Ms. Watson asserts in her Petition to this Court that the trial court erred in this finding. However, we have thoroughly reviewed Ms. Watson's original Recusal Motion and accompanying memorandum, and agree with the trial court that Ms. Watson fails to state that her Motion is not being presented for any improper purposes. In addition, Ms. Watson fails to include in her Petition to this Court copies of the dispositive orders in the trial court, specifically, the trial court's denial of Ms. Watson's original Recusal Motion. Rule 10B, Section 2.03 expressly requires that litigants seeking an accelerated appeal of the denial of a recusal motion include copies of these types of orders with their petitions to this Court. *See* Tenn. Sup. Ct. R. 10B, § 2.03. Despite these failings, we will proceed to consider the substantive issue raised in this appeal. However, we caution litigants that "while in this case we chose to proceed with our review despite the fact that the parties chose not to abide by the rules of th[e Tennessee Supreme] Court, we cannot say we will be so accommodating and choose to do the same in the future." ***Wells v. Wells***, No. W2009-01600-COA-R3-CV, 2010 WL 891885, *4 (Tenn. Ct. App. March 15, 2010).

## II.

Ms. Watson asserts in her Petition to this Court that the trial judge should have withdrawn from presiding over the preparation of the record because the trial judge's refusal to approve Ms. Watson's Statement of Proceedings evidences that the trial judge was biased against her. Specifically, Ms. Watson asserts that: (1) the trial judge granted the Motion to Strike her Statement of Proceedings because it exposed the trial judge's illegal conduct; and (2) the court reporter colluded with the trial judge to remove evidence of discrimination from the transcript because the court reporter has a bias against those on public assistance.[5] Thus, the basis of Ms. Watson's Petition in this Court is that the trial judge's partiality is evidenced by his refusal to accept  Ms. Watson's Statement of Proceedings.[6]

Tennessee Supreme Court Rule 10, Code of Judicial Conduct Rule 2.11 provides that

---

[5] The Petition before this Court concerns only Ms. Watson's assertion that the trial judge in this case "has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding." Tenn. Sup. Ct. R. 10, § 2.11(A)(1). Accordingly, while we will consider Ms. Watson's evidence of bias with regard to the trial judge as it relates to his relationship with the court reporter, the question of any bias with regard to the court reporter is not within the purview of this Court.

[6] Ms. Watson raised additional factual allegations in her original Recusal Motion, which were not raised in her Petition in this Court. It is well-settled that issues not presented are waived in the appellate court. *See* Tenn. R. App. P. 13(b) (noting that review will generally only extend to those issues presented for review). Thus, any issues previously raised to the trial court, but that were not properly raised on appeal, are waived. Consequently, we will only address the allegations and argument contained in Ms. Watson's Petition to this Court.

-12-

"[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned[.]" It is well-settled that "'[t]he right to a fair trial before an impartial tribunal is a fundamental constitutional right.'" *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009) (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn.2002)). Article VI, § 11 of the Tennessee Constitution, Tennessee Code Annotated § 17-2-101, and the Code of Judicial Conduct prohibit a judge from presiding over a matter in which the judge has an interest in the outcome or where the judge is connected to either party. The purpose of the prohibition is to "guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court [] reached a prejudged conclusion because of interest, partiality, or favor." *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002) (citation omitted). Additionally, we have emphasized that "the preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial." *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App.1998) (citations omitted). Accordingly, even in cases wherein a judge sincerely believes that she can preside over a matter fairly and impartially, the judge nevertheless should recuse herself in cases where a reasonable person "'in the judge's position, knowing all the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564–65 (Tenn. 2001) (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). It is an objective test designed to avoid actual bias and the appearance of bias, "since the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Davis*, 38 S.W.3d at 565 (citation omitted).

Adverse rulings and "the mere fact that a witness takes offense at the court's assessment of the witness" do not provide grounds for recusal, however, in light of the "adversarial nature of litigation." *Id.* Further, although "bias" and "prejudice" are terms that usually refer to "a state of mind or attitude that works to predispose a judge for or against a party. . . . Not every bias, partiality or prejudice merits recusal." *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). Rather, "[t]o disqualify, prejudice must be of a personal character, directed at the litigant, [and] 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case.'" *Id.* (quoting *State ex rel. Wesolich v. Goeke*, 794 S.W.2d 692, 697 (Mo. Ct. App. 1990)). We review the trial court's denial of a motion for recusal under a *de novo* standard of review. Tenn. S.Ct. R. 10B, § 2.06.

As previously stated, the basis of Ms. Watson's Petition is that the trial court improperly struck her Statement of Proceedings in order to conceal evidence of his discrimination and bias. The trial court set forth specific findings of fact and conclusions of law in granting the City's Motion to Strike the Statement of Proceedings submitted by Ms. Watson. In rejecting Ms. Watson's Statement of Proceedings, the trial court specifically found

that:

> A)    This statement does not convey a fair, accurate and complete account of what transpired with respect to those issues that are the basis of the appeal.
>
> B)    This statement in fact contains some statements/summarizations by [Ms. Watson,] which are just not true and grossly misleading.

After thoroughly reviewing Ms. Watson's proposed Statement of Proceedings, we agree with the trial court, and therefore, discern no impropriety or evidence of bias in the trial court's refusal to accept Ms. Watson's Statement of Proceedings.

Rule 24 of the Tennessee Rules of Appellate Procedure governs the preparation of the record on appeal, including the preparation of a Statement of the Evidence. According to Rule 24(c):

> **Statement of the Evidence When No Report, Recital, or Transcript Is Available.** If no stenographic report, substantially verbatim recital or transcript of the evidence or proceedings is available, the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. **The statement should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal**. . . . Upon filing the statement, the appellant shall simultaneously serve notice of the filing on the appellee, accompanied by a short and plain declaration of the issues the appellant intends to present on appeal. Proof of service shall be filed with the clerk of the trial court with the filing of the statement. If the appellee has objections to the statement as filed, the appellee shall file objections thereto with the clerk of the trial court within fifteen days after service of the declaration and notice of the filing of the statement. Any differences regarding the statement shall be settled as set forth in subdivision (e) of this rule.

Tenn. R. App. P. 24(c) (emphasis added). Rule 24 also sets forth the procedure when the parties disagree as to the matters contained in the Statement of the Evidence:

**Correction or Modification of the Record.** If any matter properly includable is omitted from the record, is improperly included, or is misstated therein, the record may be corrected or modified to conform to the truth. Any differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court. **Absent extraordinary circumstances, the determination of the trial court is conclusive.** If necessary, the appellate or trial court may direct that a supplemental record be certified and transmitted.

Tenn. R. App. P. 24(e) (emphasis added).

The trial judge in this case determined that Ms. Watson's Statement of Proceedings failed to comply with Rule 24(c) in that it failed to "convey a fair, accurate and complete account of what transpired" in the trial court. Tenn. R. App. P. 24(c). The trial court's decision is, consequently, conclusive absent some showing of "extraordinary circumstances." Tenn. R. App. P. 24(e).

Although not stated as such, we perceive Ms. Watson's argument to be that extraordinary circumstances exist because the trial judge is biased against her. To support this argument, Ms. Watson asserts that the verbatim transcript submitted by the City fails to provide a full and complete depiction of the proceedings in the trial court. First, Ms. Watson asserts that the transcript is incomplete because it does not contain descriptions of Ms. Watson's physical actions, including evidence of her physical discomfort during the proceedings. In addition, Ms. Watson asserts that the transcript fails to show the inappropriate demeanor of the trial judge. Ms. Watson asserts that she corrected this omission with her own Statement of Proceedings, which contains depictions of Ms. Watson's physical discomfort and her perceptions of the trial judge's demeanor. Indeed, Ms. Watson's Statement of the Proceedings contains not only a depiction of the testimony and evidence allegedly presented, but also a record of Ms. Watson's internal thoughts throughout the proceedings. For example, during Ms. Watson's recount of her direct examination by her own counsel, Ms. Watson recounts her "belief" as to what was transpiring in the trial court at the time:

Belief: I felt that I couldn't get anything out and tell my whole story.

My memory is not very good on a lot of things—and in this trial—I was depending on my attorney to ask me relevant questions because my pain level has increased and my ability to

concentrate was halfway gone.

At that point I could tell, by Mr. Anyanwu's demeanor that he had given up—he argued for the questions, some that were leading, to be allowed but lost and as a result, skipped many of the questions that I felt were relevant to my case as well as those that would allow me to present other relevant testimony.

The inclusion of Ms. Watson's internal thoughts and beliefs is clearly not the province of a Statement of the Evidence. Respectfully, that purpose of a transcript is not to describe the physical condition or demeanor of the participants, but simply to convey an accurate record of the verbal exchanges and exhibits presented during the proceedings. *Black's Law Dictionary* defines a transcript as a "[w]ord-for-word typing of everything that was **said** "on the record" during the trial. *Black's Law Dictionary* 1342 (5th ed. 1979) (emphasis added). Accordingly, a proper transcript contains nothing more that the verbal exchanges between the parties and the trial court. Ms. Watson's inclusion of thoughts and beliefs **unsaid**, was therefore, clearly improper. The trial court, thus, did not err in refusing to accept Ms. Watson's Statement of Proceedings.

Ms. Watson also asserts that some statements and events contained in the transcript submitted by the City are simply incorrect. Indeed, Ms. Watson's Statement of Proceedings contains statements and events that contradict the verbatim transcript submitted by the City. For example, Ms. Watson's Statement of Proceedings states that the trial judge refused to allow Ms. Watson to put on any rebuttal proof. In contrast, the transcript submitted by the City contained the following exchange:

Mr. Cobb [counsel for the city]: We rest.

The [Trial] Court: You rest at this time. Any rebuttal from [Ms. Watson]?

Mr. Anyanwu [counsel for Ms. Watson]: No, Your Honor.

Thus, Ms. Watson's Statement of Proceedings contains allegations that are simply not supported by the verbatim transcript in this case. Ms. Watson asserts, however, that the contradictions between the submitted transcript and her Statement of Proceedings show that the trial court and the court reporter conspired to conceal the trial judge's improper actions during the proceedings. Ms. Watson states in her Petition to this Court that she can bring forth witnesses to testify as to the discrimination in the trial court. However, neither Ms. Watson's original Recusal Motion nor the Petition in this Court contain any affidavits from third-parties evidencing any discrimination or improper behavior on the part of the trial judge.

"Without more,[] unsupported allegations of bias are simply too vague to require the trial court's recusal." *Bledsoe v. Bledsoe*, No. W1999-01515-COA-R3-CV, 2000 WL 371196, at *6 (Tenn. Ct. App. 2000); *see, e.g.*, *Ellison v. Alley*, 902 S.W.2d 415, 418 (Tenn. Ct. App.1995) (affirming trial court's refusal to recuse itself where appellants' motion and affidavit alleged merely that Chancellor "would likely be biased against" appellants); *State v. Parton*, 817 S.W.2d 28, 30 (Tenn. Crim. App.1991) (affirming trial court's refusal to recuse itself where appellant's motion merely alleged that, in prior hearings, judge had exhibited bad attitude and had always imposed maximum sentence against appellant); *Wiseman v. Spaulding*, 573 S.W.2d 490, 493 (Tenn. Ct. App.1978) (affirming trial court's refusal to recuse itself where appellant's affidavit contained "nothing more than circumstances from which it might be inferred that the Trial Judge might have some reason to have a favorable or unfavorable opinion of the parties"). In this case, Ms. Watson's unsupported allegations of discrimination and bias, which are wholly unsupported by the verbatim transcript in this case, are insufficient to create "a reasonable basis for questioning the judge's impartiality." *Davis*, 38 S.W.3d at 565 (citation omitted).

Ms. Watson also seems to suggest that the trial judge failed to take into account Ms. Watson's indigency in requiring her to produce a verbatim transcript of the proceedings in the trial court. Ms. Watson also asserts that the trial court's ruling that a transcript be filed is contrary to the Order of this Court allowing Ms. Watson to file either "a full transcript of the trial court proceedings, submitting a Statement of the Evidence to the trial court, or filing a notice of no transcript or Statement of Evidence." We respectfully disagree. First, this Court has previously held that there is no law that requires the State to provide an indigent litigant with a free copy of a trial transcript in a civil case such as this one. *See Ruff v. Raleigh Assembly of God Church, Inc.*, No. 02A01-9410-CV-00226, 1996 WL 9730, *2 (Tenn. Ct. App. Jan. 9, 1996), perm. app. denied, (July 1, 1996) ("Moreover, we are not aware of any law that requires the trial court to grant a free copy of a trial transcript to an indigent plaintiff in a civil action."); *see also Bynum v. Duncan*, No. C.A. 138, 1989 WL 128291, at *2 (Tenn. Ct. App., Oct.30, 1989) ("But absent precedential or constitutional considerations, the issue [of providing a free transcript to indigent civil litigants] is a legislative, rather than a judicial one, and thus beyond our reach."). Further, Ms. Watson misapprehends this Court's order of September 16, 2013. Although this Court stated that Ms. Watson may be allowed to prepare either a transcript or a Statement of the Evidence, the Court did not excuse Ms. Watson from complying with Rule 24 of the Tennessee Rules of Appellate Procedure. Because Ms. Watson's Statement of Proceedings contained improper references to Ms. Watson's internal thought processes, it did not depict "a fair, accurate and complete account of what transpired" in the trial court. *See* Tenn. R. App. P. 24(c). The trial judge was, therefore, well-within the authority granted to him pursuant to Rule 24 in refusing to accept Ms. Watson's submission.

After thoroughly reviewing the record, we conclude that the trial court's failure to

-17-

approve Ms. Watson's Statement of Proceedings is not evidence of an appearance of partiality on the part of the trial judge. Further, after reviewing the entire record in this case, we also conclude that Ms. Watson has failed to show that a reasonable person "in the judge's position, knowing all the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Davis*, 38 S.W.3d at 565 (citation omitted). Ms. Watson has simply not submitted any evidence that the trial judge's actions in this case were the result of bias, prejudice, impropriety, or harassment. Although we are cognizant of the fact that the trial judge declined to grant any of Ms. Watson's *pro se* post-trial motions, it is well-settled that "[a]dverse rulings by a trial judge . . . are not usually sufficient to establish bias." *Ingram v. Sohr*, No. M2012-00782-COA-R3-CV, 2013 WL 3968155, at *31 (Tenn. Ct. App. July 31, 2013) (citing *State v. Cannon*, 254 S.W.3d 287, 308 (Tenn. 2008)). Rulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification. *Duke v. Duke*, 398 S.W.3d 665, 671 (Tenn. Ct. App. 2012) (citing *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App.1994)). Respectfully, Ms. Watson has failed to show the "more" required by this Court in *Duke* to justify recusal of the trial judge in this case.

Further, even if Ms. Watson's unsupported allegations regarding the demeanor of the trial court are correct, there is nothing to suggest that recusal is the appropriate remedy in this case. As previously, discussed, to warrant recusal, any alleged bias or prejudice "must come from an extrajudicial source, and must not be based upon what the judge sees or hears during the [t]rial." *Neuenschwander v. Neuenschwander*, No. E2001-00306-COA-R3-CV, 2001 WL 1613880, at *1 (Tenn. Ct. App. Dec. 18, 2001) (citing *Wilson v. Wilson*, 987 S.W.2d 555 (Tenn. Ct. App. 1998)). A trial judge's opinions of the parties or witnesses that are based on what he or she has seen at trial are not improper and "generally do[] not warrant recusal." *Neuenschwander*, 2001 WL 1613880, at *1. As this Court explained:

> The word prejudice implies an opinion held before the beginning of the trial. No such mental leaning is evident in the present case. Even though the judge is expected to have no bias at the beginning of the trial, he must, perforce, develop a bias at some point in the trial; for the decision at the conclusion of the trial is based upon the impressions, favorable or unfavorable, developed during the trial.

*Spain v. Connolly*, 606 S.W.2d 540, 544 (Tenn. Ct. App. 1980). There is simply nothing in the record that: (1) shows that the trial judge exhibited an improper demeanor or bias against Ms. Watson; or (2) shows that any alleged improper demeanor on the part of the trial judge was the result of an "extrajudicial source." *Neuenschwander*, 2001 WL 1613880, at *1. Instead, Ms. Watson simply has failed to satisfy her burden to show that there is "a reasonable basis for questioning the judge's impartiality." *Davis*, 38 S.W.3d at 565 (citation omitted).

**Conclusion**

The judgement of the Circuit Court of Madison County is affirmed and this cause is remanded to the trial court for the collection of costs and any further proceedings that may be necessary and are consistent with this Opinion. Costs are assessed to Appellant Candace Watson. Because Ms. Watson is proceeding *in forma pauperis* in this appeal, execution may issue for costs if necessary.

_____
J. STEVEN STAFFORD, JUDGE