FILED
April 9, 2015
TN COURT OF
WORKERS' COMPENSATION
CLAIMS
Time: 3:37 PM



## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

EMPLOYEE: Lovell Burton

DOCKET #: 2015-07-0004
STATE FILE #: 54511-2014

EMPLOYER: Express Employment Services

DATE OF INJURY: July 16, 2014

INSURANCE CARRIER/TPA: New Hampshire Ins. Co. / Sedgwick

## EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge on March 25, 2015, upon the Request for Expedited Hearing filed by Lovell Burton (Mr. Burton), the Employee, on February 23, 2015, pursuant to Tennessee Code Annotated section 50-6-239, to determine if Express Employment Services (Express), the Employer, is obligated to provide further medical benefits.

The undersigned Workers' Compensation Judge conducted an in person Expedited Hearing on March 25, 2015. Mr. Burton represented himself. Marianna Jablonski represented Express. Considering the applicable law, the documentary evidence submitted, Mr. Burton's testimony, argument of the parties and the technical record, this Court finds that Mr. Burton is not entitled to the requested benefits.

## ANALYSIS

### Issue

*Whether Mr. Burton is entitled to additional medical evaluation of his left hand.*

### Evidence Submitted

The Court designated the following as the technical record:

Petition for Benefit Determination (PBD)
Dispute Certification Notice (DCN)
Request for Expedited Hearing (REH).

The Court did not consider attachments to the above filings not admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings and their attachments as allegations unless established by the evidence.

1

The Court admitted the following documents into evidence:

Exhibit 1: Medical Records of:

- Physician's Quality Care (pp. 1-8)
- Family Health Care of Jackson-Dr. Gray (pp. 9-10)
- EMG Clinics of Tennessee (p. 11)

Exhibit 2: Wage Statement (AWW: $441.04/ Comp. Rate: $294.04)
Exhibit 3: Choice of Physician Form (C-42).

## History of Claim

Mr. Burton worked for Express, a temporary employment agency. On July 16, 2014, while using a nail gun, Mr. Burton accidentally shot a nail through his left small finger. Express accepted the claim as compensable and provided Mr. Burton a panel of physicians. He chose Physician's Quality Care (PQC).

On July 16, Mr. Burton saw Dr. Ellis at PQC. Mr. Burton gave a history of having shot the nail "through his pinky [sic] on the left hand." His physical examination revealed a "puncture wound lateral to [the] nail edge and on [the] pad of [the] finger with good skin approximation, [and] no bleeding." Dr. Ellis gave Mr. Burton a tetanus shot and released him with no restrictions. Mr. Burton was to follow-up on July 18, 2014, for reevaluation. He did not return.

Mr. Burton testified he was "laid-off" from Express in "August or September." He then began work in "late September" at Kilgore Flares, where his job was to pack flares. In December 2014, Mr. Burton contacted Express to request a return visit to a physician and Express approved a return visit to Dr. Ellis.

On December 24, 2014, Mr. Burton again saw Dr. Ellis. At this visit, Mr. Burton complained of "muscle spasms and tingling in the palm of the hand and pinky [sic] side of the hand that occurs daily." The "Review of Systems" noted "burning pain, numbness in left hand since injury to pinkie earlier this year." Mr. Burton claimed these complaints had "been going on ever since the day of the accident but [he] has not returned until today." He stated he had not returned because "he was letting his PCP deal with it." He further reported that his primary care physician had advised him that he "could have nerve damage and he needed an EMG." Mr. Burton claimed that, during his first visit to PQC, that "there was meat hanging out and they didn't even put sutures in the thing." On examination, Dr. Ellis noted thickened tissue on the "pad" of the small finger. He found subjective complaints of "reduced sensation to light touch" in the palm and on the entire surface of the back of Mr. Burton's left hand.

After the examination, Dr. Ellis opined that Mr. Burton's complaints were not related to the "prior puncture wound." Mr. Burton was noted to be "very angry" with Dr. Ellis' opinion. In a form releasing Mr. Burton with no restrictions, Dr. Ellis noted, "the injury to his finger would not be at least 51% related to his current complaint of pain and discomfort in his hand."

2

Mr. Burton testified that he did not follow-up with Dr. Ellis as recommended on July 16, 2014, because he treated with his primary care physician (PCP), Dr. Stewart, at Family Healthcare of Jackson. The records of Dr. Stewart are almost completely illegible but a note dated August 1, 2014 appears to read "L. finger injury-numbness-work-related." Ex. 1 at 9. Mr. Burton testified that Dr. Stewart referred him for a nerve conduction study (NCS). Dr. Ronald Bingham performed an NCS on August 21, 2014 and recorded a "completely normal" study of the left upper extremity.

At the time of the hearing, Mr. Burton was fifty-three (53) years of age, had a GED and had completed one year of vocational school. He remained employed full-time at Kilgore. The laceration on the finger had healed but he continued to have pain, numbness, and tingling in the left hand.

### Mr. Burton's Contentions

Mr. Burton contends that he had no pain, numbness, or discomfort in his left hand until his July 16, 2014 accident. He described, and attempted to demonstrate, the diminished motion in his left fingers. He admits missing his July18, 2014 follow-up appointment with Dr. Ellis at PQC but states "everybody misses appointments." He argues that his failure to appear should not prevent him from receiving further evaluation of his hand. Express accepted his claim and should pay for further evaluation.

### Express' Contentions

Express contends that it complied with all requirements of the workers' compensation law. It provided medical care to Mr. Burton for his July 16, 2014 injury. Mr. Burton is required by Tennessee Code Annotated section 50-6-204(d)(1) to comply with the treatment recommendations of the authorized treating physician. Express may suspend further medical care to Mr. Burton because his failure to return for his July 18, 2014 follow-up appointment constituted a failure to comply with treatment recommendations, which is prohibited by Tennessee Code Annotated section 50-6-204(d)(8).

Beyond Mr. Burton's failure to comply with Dr. Ellis' treatment recommendations, Dr. Ellis opined Mr. Burton's complaints of pain and discomfort in his left hand are not related to his July 16, 2014 injury. Because he is the authorized treating physician, Dr. Ellis' opinions are presumed correct. In addition, the NCS performed by Dr. Bingham on August 21, 2014, was completely normal.

### Findings of Fact and Conclusions of Law

*Standard Applied*

The Workers' Compensation Law shall not be construed remedially or liberally in favor of either party but instead is to be construed fairly and impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code

Ann. § 50-6-116 (2014). Tennessee Code Annotated section 50-6-239(c) provides that "[u]nless the statute provides for a different standard of proof, at a hearing the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence." At an Expedited Hearing, a workers' compensation judge may enter an interlocutory order for medical or temporary benefits upon a determination that the injured employee would likely prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1)(2014).; *McCord v. Advantage Human Resourcing*, No. 2014-06-0063 (Tenn. Work. Comp. App. Bd., March 27, 2015); *McCall v. Natl. Health Corp.*, 100 S.W.3d 209, 214 (Tenn. 2003).

## *Factual Findings*

Mr. Burton sustained a compensable injury to his left small finger on July 16, 2014. He properly reported the injury and Express provided the medical care required under the workers' compensation law. Dr. Ellis opined that the injury to Mr. Burton's left small finger did not contribute 50% or more in causing his complaints of left hand pain, numbness, or discomfort. The NCS performed by Dr. Bingham on August 21, 2014 was completely normal. There is no medical proof rebutting Dr. Ellis' opinion.

## *Application of Law to Facts*

In this case, the basic facts are not in dispute. Mr. Burton accidentally shot a nail through his left small finger on July 16, 2014 and saw Dr. Ellis for treatment of the finger injury. Express argues, and Mr. Burton agrees, that he did not return to Dr. Ellis for a July 18, 2014 follow-up appointment. Mr. Burton then did not request further medical care from Express until December 2014.

Tennessee Code Annotated section 50-6-204(d)(1) requires that the injured employee "submit to examination by the employer's physician at all reasonable times if requested to do so by the employer." Further, Tennessee Code Annotated section 50-6-204(d)(8) provides that:

> [i]f the injured employee refuses to comply with any reasonable request for examination or to accept the medical or specialized medical services that the employer is required to furnish under this chapter, the injured employee's *right to compensation* shall be suspended and no compensation shall be due and payable while the injured employee continues to refuse. (emphasis added).

Express argues that Mr. Burton failed to comply with medical treatment because he missed his July 18 appointment with Dr. Ellis and, relying upon Tennessee Code Annotated section 50-6-204(d)(1) and (d)(8), takes the position that Mr. Burton is not entitled to further medical evaluation. However, the plain language of Tennessee Code Annotated section 50-6-204(d)(8) reads that *compensation* might be suspended, not *medical benefits*. The provision of medical care is a benefit to the injured employee and is not compensation to that employee for an injury. By its very nature, medical care cannot be *suspended*; it can simply not be paid by the employer as happened in this case. Express' reliance upon section 50-6-204(d)(8) is misplaced.

4

Regardless of the inapplicability of section 50-6-208(d)(8), the evidence establishes that Express provided a follow-up visit to Dr. Ellis in December 2014. In fact, Express relies upon Dr. Ellis' December note in its defense of this Expedited Hearing. The Court finds the record of the December visit with Dr. Ellis coupled with the totality of the medical evidence is dispositive.

To prove entitlement to benefits, Mr. Burton must show that his alleged injury arose "primarily out of his employment." Tenn. Code Ann. 50-6-102(13)(2014). "Arising primarily out of" is defined as a showing, by a preponderance of the evidence, that the employment contributed more than 50% in causing the injury. Id. at 50-6-102(13)(A). This contribution must be shown to reasonable degree of medical certainty, which means the work injury is "more likely than not" the cause of the injury when considering all causes. Id. at 50-6-102(13)(B) and (C). The opinion of the treating physician, in this case Dr. Ellis, is presumed correct subject to being rebutted by a preponderance of the evidence.

Dr. Ellis opined in his office note of December 24, 2014, that Mr. Burton's current complaints of pain, numbness, and discomfort in his left hand were not related to the "prior puncture wound." More importantly, he stated in a return to work form, "the injury to his finger would not be at least 51% related to his current complaint of pain and discomfort in his hand." Dr. Ellis' opinion establishes that Mr. Burton's alleged injury described as pain, numbness and discomfort of the left hand did not arise primarily out of his employment with Express. Dr. Ellis' opinion, as the authorized treating physician, is presumed correct unless rebutted by a preponderance of the evidence. The only other medical evidence on the issue is a vague reference in Dr. Gray's notes that appear to read the "numbness" is work related. This language is insufficient to establish a causal connection between the injury of July 16, 2014, and Mr. Burton's current allegations of injury. Moreover, there is no verifiable evidence in the practically illegible notes of Dr. Gray apart from this unsubstantiated statement to support any meaningful medical opinion based upon any evaluation or treatment. Several months before Dr. Ellis rendered his opinion that the alleged injury is not work related, the NCS study was completely normal. This objective test result supports Dr. Ellis' opinion.

Beyond the medical proof, the Court directly observed Mr. Burton's hand and finger. The scarring on the small finger is visible. As recorded by Dr. Ellis, the Court also notes the scarring is limited in scope to the nail area and pad of the left small finger. Notably, Mr. Burton continues to work a full time job described as packing flares at a factory. This is indicative of an ability to utilize the left hand for gainful employment. The subsequent work history is absent from the notes of Dr. Ellis, which bolsters the fact that Dr. Ellis solely considered the July 16, 2014 injury when arriving at his causation opinion.

The Court notes that Mr. Burton chose to proceed *pro se* in the proceedings, which is his prerogative. However, Tennessee law is clear that *pro se* litigants must comply with the same standards to which lawyers must adhere. *Watson v. City of Jackson*, 448 S.W.3d 919, 926-27 (Tenn. Ct. App. 2014). This includes presenting adequate medical proof. Though he seems sincere in his belief that the finger injury prompted all of his current complaints, Mr. Burton has not rebutted the opinion of Dr. Ellis. While Mr. Burton's lay testimony is relevant, it is insufficient under law to rebut an expert medical opinion.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Burton's claim against Express and its workers' compensation carrier for the requested medical benefits is denied at this time.

2. This matter is set for Initial Hearing on June 24, 2015, at 9:00 AM Central Time.

**ENTERED this the 9th day of April, 2015.**

_____

**Allen Phillips, Judge**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial Hearing has been set with **Judge Allen Phillips, Court of Workers Compensation. You must dial in at 731-422-5263 or 855-543-5038 toll free to participate in your scheduled conference.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.** All conferences are set using Central Time (CT).

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Request for Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within

ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before the Clerk of Court shall submit the record to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 9th day of April, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|---------------|------------------|---------|------------|-----------|---------------|
| Lovell Burton | X | X | | | | 335 Fairmont Avenue Jackson, TN 38301 |
| Greg Fuller | | | | | X | ghfuller@mijs.com |
| Marianna Jablonski | | | | | X | mljablonski@mijs.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims

7