# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
Assigned March 6, 2015

## IN RE ADISON P.

**Appeal from the Juvenile Court for Henderson County**
**No. 6203      Steve Beal, Judge**

**No. W2015-00393-COA-T10B-CV – Filed April 21, 2015**

This accelerated interlocutory appeal results from the trial court's denial of Appellant William R. F.'s ("Father")[1] motion for recusal. Having reviewed the trial court's ruling on the motion for recusal pursuant to the de novo standard of review required under Tennessee Supreme Court Rule 10B, we reverse the judgment of the trial court.

**Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right; Judgment of the Chancery Court is Reversed**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which KENNY ARMSTRONG, J., joined. BRANDON O. GIBSON, J., filed a dissenting opinion.

Brian Schuette, Bowling Green, Kentucky, for the appellant, William R. F.

Joey M. P., Pro se.

## OPINION

## Background

This is an accelerated interlocutory appeal from the Henderson County Juvenile Court's denial of a recusal motion. The parties in this case are parents to a minor child who was born in October of 2002. We consider the case only on the submissions of the parties and the attachments thereto.[2]

---

[1] In order to protect the anonymity of minor children, the Court, in its discretion, may elect to use initials for the children, their parents, and others. K.B.J. v. T.J., 359 S.W.3d 608 n.1 (Tenn. Ct. App. 2011).

The litigation underpinning this appeal concerns a custody dispute between the minor child's parents. Father and the minor child's mother, Appellee Joey M. P. ("Mother"), were not married when the minor child was born. Approximately a year after the minor child's birth, the trial court held a hearing with regard to custody and paternity. An order on the hearing was subsequently entered on December 8, 2003. In addition to declaring Father as the minor child's natural father, the trial court's December 8, 2003, order provided Father with specified visitation rights.

According to Father, Mother, over time, consistently failed to follow the trial court's order with respect to visitation. As a result, on July 11, 2011, Father filed a petition for contempt and asked that the trial court enter an order granting him temporary exclusive custody of the minor child. In addition to alleging that Mother had refused to allow Father to exercise certain visitation rights, Father alleged that Mother had removed the minor child to Texas. The parties later reached an agreement concerning the parenting issues, and on August 25, 2011, an agreed order was entered prohibiting Mother from removing the minor child out of Tennessee absent court approval.

Despite the agreed order entered in August of 2011, the friction between the parties continued. Visitation disputes remained a problem and led to further litigation. Once again, however, the parties were able to reach some resolution. Following a successful mediation, the trial court entered an agreed order on June 4, 2013. This agreed order permitted Mother to relocate to Texas with the minor child and outlined certain dates on which Father would have visitation. In relevant part, the June 4, 2013, order provided that Father was entitled to visitation with the minor child "during the summer months with the exception of one week."

According to Father, although his summer visitation with the minor child was scheduled to begin on June 5, 2013, he claims he was unable to exercise that visitation as a result of his inability to locate or communicate with Mother. He further claims that although the trial court held a telephonic conference with the parties' counsel on June 26, 2013, the trial court did not enter an order following the conference and refused to order Mother to comply with the parties' agreed visitation order. Eventually, on July 26, 2013,

_____
[2] Father's petition for an accelerated interlocutory appeal was accompanied by several documents that were filed in the trial court, including his motion for recusal, the trial court's order denying his recusal motion, and transcripts of proceedings that occurred before the trial court. Although the minor child's mother filed an answer to Father's petition for an accelerated appeal requesting that his petition be dismissed, she did not take issue with Father's recitation of the basic facts surrounding the case.

Father, acting *pro se*, filed a "Petition for Contempt and Emergency Change of Custody." Despite his efforts to schedule this petition for a hearing before Judge Steve Beal, Father alleges that the trial court refused to hear his petition. Father later retained the assistance of counsel and filed a motion for the entry of a show cause order. Therein, Father requested that Mother appear and show cause why she should not be held in contempt for failing to abide by the agreed order entered on June 4, 2013. Father also gave notice to Mother's counsel that the matter was set for hearing on April 23, 2014.

Father alleges that when his counsel appeared before the trial court to present his motion, Judge Beal refused to hear it. Apparently, Judge Beal indicated he would not hear the motion unless Mother's counsel consented to the hearing or Mother was personally served with process. Father believed that such a requirement was unnecessary in light of the fact that he had properly noticed the motion and served it on Mother's counsel of record. Accordingly, on June 9, 2014, Father filed a complaint for mandamus relief in the Circuit Court of Henderson County. Father also filed a complaint against Judge Beal with the Tennessee Board of Judicial Conduct on June 13, 2014. Therein, Father alleged that Judge Beal's failure to hear his motion constituted judicial misconduct.

On July 28, 2014, the Circuit Court conducted a hearing on Father's complaint for mandamus relief. Approximately a month later, on August 27, 2014, the Circuit Court entered a writ of mandamus granting Father relief in relation to his motion for the entry of a show cause order. Specifically, the Circuit Court directed Judge Beal to set Father's motion for the entry of a show cause order for hearing.[3] Following the Circuit Court's grant of mandamus relief, Father filed a petition in the trial court requesting that Judge Beal recuse himself from overseeing the visitation dispute between the parties. Judge Beal denied the motion, and although Father subsequently filed a petition for recusal appeal under Tennessee Supreme Court Rule 10B, we dismissed the appeal as untimely.[4]

On December 4, 2014, Father filed a second motion for recusal. This motion was predicated on grounds different from those that had been specifically raised in the first motion for recusal. Namely, the second motion alleged that there was a reasonable question regarding Judge Beal's objectivity in Father's case due to the fact that Judge Beal directed Father's counsel to draft an order that partially enforced Father's visitation

---

[3] As noted by Father, Judge Beal has appealed the order of the Circuit Court that granted mandamus relief. That appeal, *In re Adison P.*, No. W2014-01901-COA-R3-CV, is still pending in this Court.

[4] We dismissed the first recusal appeal, *In re Adison P.*, No. W2014-02000-COA-T10B-CV, by order entered on October 31, 2014.

rights, only to redraft the order to exclude those provisions. As Father recited in the motion:

> At the conclusion of the September 3, 2014, hearing, Judge Beal directed [Father's] counsel to draft an order setting forth his rulings. Counsel complied with the court's directive . . . . Without explanation, however, Judge Beal redrafted the order, apparently for the sole purpose of excluding those portions that enforced on a temporary basis [Father's] right to visit with his daughter in Houston, Texas one weekend per month and to have telephone contact with her each Friday evening at 6:00 PM. A copy of the order actually entered by the Court is attached hereto as Exhibit 2. Judge Beal took this action in spite of the fact that all parties to the proceeding had agreed to the order as to form and that it was properly submitted. By entering an order that excluded provisions protecting [Father's] right to resume contact with his daughter, Judge Beal has demonstrated a level of bias that constitutes grounds for his disqualification.

On January 7, 2015, the trial court held a hearing on Father's second motion for recusal, and on February 17, 2015, Judge Beal entered an order denying the motion. Judge Beal dismissed Father's second motion for recusal by reasoning that the matters complained of had been disposed of in the order denying Father's first motion for recusal. As such, Judge Beal considered the matters to be *res judicata*. Following Judge Beal's denial of the second motion for recusal, Father timely pursued this accelerated appeal pursuant to Tennessee Supreme Court Rule 10B. In response to an order of this Court, Mother filed an answer to Father's petition for recusal appeal on March 23, 2015. Having reviewed Father's petition for recusal appeal, along with its supporting documents, and Mother's answer in response to Father's petition, we conclude that additional briefing and oral argument are unnecessary. As such, we now proceed to review Father's petition in accordance with Tennessee Supreme Court Rule 10B sections 2.05 and 2.06.[5]

---

[5] We observe that Father's second motion for recusal and second petition for recusal appeal are technically deficient in two respects. First, Father's second motion for recusal contains no affirmative statement that "it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Tenn. Sup. Ct. R. 10B, § 1.01. Second, although Father's second motion for recusal references that it was supported by an affidavit (as is required under Tennessee Supreme Court Rule 10B, Section 1.01), this affidavit was not included with the supporting documents to Father's second petition for recusal appeal. Tennessee Supreme Court Rule 10B, Section 2.03 states that "[t]he petition [for recusal appeal] shall be accompanied by a copy of the motion and all supporting documents filed in the trial court[.]" Tenn. Sup. Ct. R. 10B, § 2.03. Notwithstanding these deficiencies, we will proceed to consider the substantive issue raised on appeal. "However, we caution litigants that 'while in this case we chose to proceed with our review despite the fact that the parties chose not to abide by the rules of th[e Tennessee Supreme] Court, we cannot say we

4

## I.      Issue on Appeal

When reviewing a Tennessee Supreme Court Rule 10B appeal, the only order we may review is the trial court's order that denies a motion to recuse. *Duke v. Duke*, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012). In this appeal, we must determine whether the trial court erred in denying Father's second motion for recusal.

## II.      Standard of Review

We review the trial court's ruling on the motion for recusal under a *de novo* standard of review. Tenn. Sup. Ct. R. 10B, § 2.01.

## III.      Discussion

Pursuant to Tennessee Supreme Court Rule 10, Code of Judicial Conduct Rule 2.11, "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned[.]" "'The right to a fair trial before an impartial tribunal is a fundamental constitutional right[,]'" *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009) (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002)), and it remains "important to preserve the public's confidence in a neutral and impartial judiciary." *Id.* As we have emphasized in the past, "the preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial." *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998) (citations omitted). Even when a judge sincerely believes that he can preside over a matter in a fair and impartial manner, recusal is nonetheless required where a reasonable person "'in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564-65 (Tenn. 2001) (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). "It is an objective test designed to avoid actual bias and the appearance of bias, 'since the appearance of bias is as injurious to the integrity of the judicial system as actual bias.'" *Shelby County Gov't v. City of Memphis*, No. W2014-02197-COA-T10B-CV, 2015 WL 127895, at *4 (Tenn. Ct. App. Jan. 8, 2015) (citation omitted).

The genesis for Father's second motion for recusal may be found in the transcript of proceedings from a September 3, 2014, hearing before the trial court. The hearing conducted on that date concerned several matters, including a motion to withdraw by Mother's counsel and Father's initial motion for recusal. In addition to ruling that he was

_____

will be so accommodating and choose to do the same in the future.'" *Watson v. City of Jackson*, 448 S.W.3d 919, 928 (Tenn. Ct. App. 2014) (citing *Wells v. Wells*, No. W2009-01600-COA-R3-CV, 2010 WL 891885, at *4 (Tenn. Ct. App. Mar. 15, 2010)).

denying Father's motion for recusal, Judge Beal made several rulings concerning temporary custody of the child. In part, Judge Beal ruled as follows:

> I'm going to instruct there be a weekend visitation, and I'm going to have that, if [Father] would like, from a Friday from 6:00 p.m., which would be after school, until Sunday afternoon, let's say six -- well, 5:00 p.m. That gets the child back more in time for school and gets everybody more settled. And **I'm going to order that to be done within the next 30 days**, in that timeframe. (emphasis added)

In addition to this visitation, Judge Beal ruled that Father was entitled to recurring visitation once a month until a final hearing on Father's motion to show cause occurred. Judge Beal instructed that the scheduling of such additional visitation could be handled by the entry of separate monthly orders as was necessary. Judge Beal further ruled that Father was entitled to speak with his daughter by telephone once per week.

Following the September 3, 2014, hearing, Father's counsel prepared a draft order responsive to the trial court's rulings. Significantly, the draft order memorialized Judge Beal's rulings concerning temporary visitation with the minor child. Although this proposed order was agreed as to form by all parties, Judge Beal refused to sign it. Instead, Judge Beal drafted his own order that did not include any reference to Father's rights to temporary visitation; this order, which was entered on September 22, 2014, addressed only the first motion for recusal, Mother's counsel's motion to withdraw, and a child support issue. It was Judge Beal's refusal to enter the prepared draft order that caused Father to file his second motion for recusal.

Although Judge Beal denied the second motion for recusal on the basis that all the matters complained of by Father were dealt with in connection with Father's first motion for recusal, this interpretation is simply incorrect. Father admittedly raised the same legal arguments concerning Judge Beal's obligation to recuse himself from the case, but Father's second motion for recusal did not simply regurgitate the factual grounds presented to the trial court in the first motion for recusal. Rather, the second motion for recusal was filed in response to Judge Beal's refusal to enter the draft order that recognized Father's temporary visitation rights. Despite Judge Beal's comments at the second recusal hearing that he perceived the recusal issue to be moot and his ultimate determination that it was *res judicata*, we agree with Father that the second recusal request was appropriately before the trial court. Father could not have raised Judge Beal's refusal to enter the prepared draft order in connection with his first motion for recusal because it was factually impossible to do so. Judge Beal's entry of the order

excluding mention of his temporary visitation rulings did not occur until several weeks after the hearing on Father's first motion for recusal.[6]

With respect to the substantive merits of the second motion for recusal, we agree with Father that the trial court's actions in entering the September 22, 2014, order give rise to a reasonable basis for questioning Judge Beal's impartiality. Father's draft order following the September 3, 2014, hearing accurately reflected the rulings that Judge Beal made, and all parties agreed to the entry of the order as to form. Despite this, Judge Beal personally redrafted and entered an order that excluded the rulings favorable to Father's visitation rights. When discussing the matter at the second recusal hearing, Judge Beal offered no real explanation for his actions other than that which is evidenced by the following exchange:

> [Father's counsel]: Well, now, you . . . did not memorialize that order as I think --
>
> [Judge Beal]: It's in the past.
>
> [Father's counsel]: --the trial court is supposed to do. The trial court speaks through its written orders.
>
> [Judge Beal]: An order, what I rule is what's placed in the final order, counsel.
>
> [Father's counsel]: I did place it in the final order.
>
> [Judge Beal]: That was not -- no, counsel, counsel--
>
> [Father's counsel]: I drafted it.
>
> [Judge Beal]: Be quiet a moment. The order was not what I wished my final ruling to be, and I placed into the order my

---

[6] Although the trial court's September 22, 2014, order denying Father's first motion for recusal is the same order to which Father attributes judicial bias on account of its exclusion of Judge Beal's temporary visitation rulings, Father was in no position to raise the new grounds for recusal in connection with his first accelerated recusal appeal. Again, the new grounds were not litigated or ruled upon in the first recusal hearing, as they had not yet occurred. We further note that Father was under no obligation to appeal his substantive grievances concerning the September 22, 2014, order's omission of favorable visitation rulings in connection with his first Rule 10B appeal. Although Judge Beal suggested as much during the second recusal hearing, it is important to recognize that the September 22, 2014, order was interlocutory in nature. Father's first accelerated recusal appeal entitled him to challenge only the trial court's ruling on the motion to recuse. *See Duke*, 398 S.W.3d at 668 ("Pursuant to [Tennessee Supreme Court Rule 10B], we may not review the correctness or merits of the trial court's other rulings[.]"). Likewise, in this appeal, we review only the trial court's denial of Father's second motion for recusal.

final ruling. And the last time I checked counsel does not get to tell me what the rulings of the Court [are]. The rulings of the Court [are] what I place into the order.

[Father's counsel]: I think the transcript of the hearing will reflect what the rulings of the Court were.

[Judge Beal]: Before the final order is down the Court can amend in any way the Court chooses and place the order. Now, the order as written is the order that I intended and the order I intend. Now, go ahead, counsel.

[Father's counsel]: The order that you entered is inconsistent with the Court's rulings. And the only thing taken out of the order that the Court entered as compared to the order that I drafted in accordance with the Court's instructions is anything that recognizes [Father's] rights of visitation[.]

Judge Beal's explanation offers no real insight into what appears to be an intentional decision to not memorialize rulings favorable to Father. Father initiated the recent litigation in this case in an effort to enforce visitation with his minor child, and despite Judge Beal's oral rulings giving Father temporary visitation pending a full hearing, Judge Beal refused to enter a prepared draft order that affirmed this. As already indicated, the draft order was approved as to form by all parties in this case. When this fact is considered in light of the previous history of this case, which included unsuccessful attempts to set Father's motion for the entry of a show cause order, father's filing of a complaint against Judge Beal with the Tennessee Board of Judicial Conduct, and Father's filing for mandamus relief in Circuit Court, Judge Beal's decision to not enter an order memorializing his visitation rulings favorable to Father gives cause for concern as to his ability to fairly preside over this case. Under the circumstances presented, we hold that "'a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *City of Memphis*, 2015 WL 127895, at *7 (citation omitted).

Although the dissent suggests that circumstances of this case only evidence the fact that Father disagrees with the legal positions taken by Judge Beal, we respectfully disagree. The facts of this case certainly reflect legal disagreement, but they also raise reasonable questions about the judge's neutrality. Although Judge Beal's refusal to memorialize his oral visitation rulings does not sufficiently evidence the appearance of bias when considered alone, a reasonable question of impartiality does emerge when this fact is considered against the background of the case.

Again, following the September 3, 2014, hearing, Father's counsel drafted an order responsive to Judge Beal's previous rulings and tendered it to the trial court. Notwithstanding its accuracy in memorializing Judge Beal's oral rulings, this draft order was not ultimately entered. As Judge Beal commented during the course of the second recusal hearing, "The order was not what I wished my final ruling to be, and I placed into the order my final ruling." Although we recognize that a trial court speaks through its orders, Judge Beal offered no explanation in the instant case as to why the visitation rulings in Father's favor were not included in his September 22, 2014, order. The picture we are left with, then, is one framed by a deliberate decision by Judge Beal to exclude visitation rulings he previously made in Father's favor. A review of his comments at the second recusal hearing does not suggest that he necessarily changed his mind as to the merits of the rulings he previously made; rather, his comments reflect an unwillingness, for reasons unknown, to memorialize his rulings favorable to Father. As we have already indicated, this is a cause for great concern when the history of this case is considered. We must emphasize that the primary disputes in this case concern Father's attempts at exercising visitation with the minor child. When Father previously filed a motion attempting to address the matter, Judge Beal initially refused to set Father's motion for hearing. In fact, Judge Beal refused to set the matter until a writ of mandamus issued directing him to do so. It is within this context that we have considered Judge Beal's refusal to memorialize his oral visitation rulings favorable to Father. Although we certainly cannot say with any certainty that Judge Beal actually acted with any bias with respect to any of the foregoing decisions, we simply hold that these circumstances provide a reasonable basis for questioning his impartiality.[7] Accordingly, we conclude that Judge Beal erred in his decision to continue to preside over this case. In order to promote confidence in the courts, we must guard against the appearance of impartiality. The trial court's order denying Father's second motion for recusal is hereby reversed.

---

[7] We agree with the dissent that recusal is not required merely because a litigant files a disciplinary complaint against a judge, and we certainly do not intend to suggest that filing a complaint with the Tennessee Board of Judicial Conduct should dictate such an outcome. The question of whether recusal is required must be analyzed in terms of the standard already discussed. That is, would a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, find a reasonable basis for questioning the judge's impartiality? Here, we have made reference to Father's misconduct complaint because it was a fact known to Judge Beal at the time he reviewed Father's second motion for recusal. The dissent notes that Father's misconduct complaint does not indicate when or whether it was received by the Board of Judicial Conduct, but we are satisfied from our review of the materials transmitted to us that Judge Beal was aware of it. In fact, a review of the transcript of proceedings from the first recusal hearing on September 3, 2014, indicates that Judge Beal was aware of it as of that date. In addition to our knowledge of the mandamus complaint, awareness of the judicial misconduct complaint helps inform the perception of Judge Beal's decision to not memorialize his prior rulings favorable to Father. Again, we find that when Judge Beal's lack of a satisfactory explanation for this decision is considered in light of this greater context, a reasonable basis exists for questioning his impartiality.

## IV. Conclusion

The order of the trial court denying Father's second motion for recusal is reversed. This cause is remanded to the trial court for transfer to a different judge for all further proceedings as are necessary and consistent with this Opinion. Costs on this appeal are assessed against the Appellee, Joey M. P.

_____
ARNOLD B. GOLDIN, JUDGE