IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 24, 2017 Session

## BELINDA BUTLER PANDEY v. ANEEL MADHUKAR PANDEY

**Appeal from the Circuit Court for Davidson County**
**No. 13D242      Philip E. Smith, Judge**

_____

**No. M2016-01919-COA-R3-CV**
_____

This action presents issues regarding the interpretation and application of a postnuptial agreement previously executed by parties who later filed for divorce. The trial court determined that the parties' agreement was valid and enforced its terms, including a provision allowing for an award of attorney's fees to a prevailing party who was attempting to defend the agreement. The trial court granted the wife an award of attorney's fees pursuant to this provision. In addition, the husband filed two motions seeking the trial judge's recusal, which the trial court denied. The husband timely appealed. Discerning no reversible error, we affirm the trial court's judgment. We further determine that the wife is entitled to an award of attorney's fees incurred on appeal in defending and enforcing the parties' agreement, and we remand this matter to the trial court for a determination of the reasonable amount of such an award of attorney's fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and RICHARD H. DINKINS, J., joined.

Aneel Madhukar Pandey, Nashville, Tennessee, Pro Se.

Helen Sfikas Rogers and Lawrence J. Kamm, Nashville, Tennessee, for the appellee, Belinda Butler Pandey.

## OPINION

I. Factual and Procedural Background

This divorce action was filed in the Fourth Circuit Court of Davidson County ("trial court") by Belinda Butler Pandey ("Wife") against her husband, Aneel Madhukar Pandey ("Husband"). The parties had been married for fifteen years at the time Wife filed for divorce on January 22, 2013. Three children were born of the marriage, two of whom have special needs. Prior to the inception of these divorce proceedings, on December 17, 2011, the parties entered into a "Postnuptial Agreement" ("the Agreement"). In her initial complaint, Wife asked the trial court to distribute the parties' property according to the terms of the Agreement. The Agreement, while providing for the immediate transfer of certain assets at the time of its execution, contains the following provisions relative to a subsequent divorce:

Divorce or Separation.

Each party hereby agrees that in the event of their divorce or separation:

(a) Each item of property (whether real, personal or mixed) registered to, titled to, or held in an account styled in the individual name of one of the parties shall be the separate property of that party and may be retained by the party in whose name such property is registered, titled or held or in whose name such account is styled.

(b) All items of property titled in the parties' joint names (whether real, personal or mixed) shall be divided equally (not equitably) between the parties. Further, any properties held in accounts styled in the parties' joint names shall be divided equally (not equitably) between the parties. Any untitled personal property acquired by the parties jointly shall be divided in proportion to the contribution made by each party. If the parties cannot agree upon a division of such property, then such jointly owned property shall be sold as quickly as possible and the net proceeds shall be divided by a court consistent with the terms of this subparagraph.

(c) Neither party shall have, nor assert, any interest with respect to any income earned or received during the marriage, property or appreciation, whether real, personal or mixed, of the other party, whether now owned or hereafter acquired, even though such property may constitute "marital property" within the meaning of Tenn. Code Ann. § 36-4-121, or would otherwise be subject to an equitable division under the laws of the State of Tennessee.

(d) Neither party shall be entitled to receive maintenance, alimony or support of any kind from the other party, except child support, whether temporary or permanent, whether rehabilitative, transitional or in futuro, whether past, present or future, and whether in installments or in lump sum. The parties acknowledge that the purpose of this Agreement is to promote marital harmony and to discourage either party from seeking to obtain monetary benefits by an abandonment of the marriage, or to gain benefits from properties originally acquired by the other party before or during the marriage. The parties hereby expressly assert their belief that the waiver of maintenance, alimony and support and the division of their respective properties as provided for herein are fair and equitable arrangements, and each fully intends to be bound thereby. The parties expressly contemplate the possibility of a divorce or legal separation. If the marriage is terminated by legal separation or divorce, regardless of which party is at fault or initiates such action and regardless of jurisdiction, venue, or location of such action, the parties hereby specifically agree that this Postnuptial Agreement, to the extent allowed by applicable law at the time of such legal separation or divorce, shall serve as a bar or estoppel prohibiting each party from receiving any alimony, in any form, whatsoever, from the other party.

(e) In the event that either party files an action for divorce or legal separation, the other party agrees that he or she will not contest the action for divorce or legal separation, as long as the final order in such proceedings calls for the parties to comply with the provisions of this Postnuptial Agreement.

(f) In the event of an action for legal separation or divorce, the parties agree that the division of their properties and the subsequent ownership of their properties as provided by the terms of this Postnuptial Agreement shall constitute a division of their properties and the settlement of their rights therein. Further, each party agrees that in the event of an action for legal separation or divorce brought by either of them, that neither he nor she will seek in any such proceeding, to enforce or claim any right in the properties of the other in any manner, whatsoever, which are inconsistent with the terms of this Agreement.

(Additional paragraph numbering omitted.)

Husband filed an answer to Wife's complaint on March 1, 2013, alleging that the Agreement was invalid and unenforceable due to fraud, bad faith, misrepresentation, lack of consideration, duress, and breach of its terms by Wife. Wife thereafter amended her complaint to alternatively seek an equitable distribution of the parties' assets. On April 10, 2013, Husband filed a motion seeking partial summary judgment, asking the trial court to find that the Agreement was unenforceable. This summary judgment motion was denied by the trial court in an order entered on October 15, 2013. On November 6, 2013, Husband filed "Husband's Second Motion for Partial Summary Judgment," seeking a grant of summary judgment with regard to five issues concerning the Agreement. The trial court subsequently denied this second motion for summary judgment in an order entered on January 7, 2014. According to Wife, Husband then filed a complaint in the Sixth Circuit Court for Davidson County, Tennessee, requesting that court to enter a judgment declaring that the Agreement was void *ab initio* as a matter of public policy. This pleading does not appear in the appellate record. The record does contain, however, an "Order to Transfer and Consolidate," dated August 19, 2014, wherein the Sixth Circuit Court transferred the Sixth Circuit case back to the trial court and consolidated it with the ongoing divorce action.

Meanwhile, on June 5, 2014, Husband filed a motion seeking the trial court judge's recusal, asserting that the trial court judge had demonstrated bias and prejudice. The trial court denied this motion in an order entered on July 1, 2014. Husband subsequently filed a "Motion to Clarify Existence of Fatal Error" on October 1, 2014, again disputing the validity of the Agreement. Subsequently, on October 24, 2014, Husband filed a "Motion to Void Postnuptial Agreement for Collusion and Incorporated Memorandum of Law." On October 31, 2014, the trial court entered an order denying the "Motion to Clarify Existence of Fatal Error." In this order, the trial court "direct[ed] [Husband] not to file any more dispositive motions on the validity of the parties' Postnuptial Agreement unless new facts are developed." The trial court also denied Husband's motion seeking to void the Agreement for collusion in an order entered December 19, 2014.[1]

The trial court conducted a hearing spanning four non-consecutive days in January 2015. On May 8, 2015, the trial court entered its "Memorandum Opinion and Decree of Divorce." Concerning the trial testimony, the court found Wife's testimony and the testimony of other witnesses to be highly credible while determining Husband's testimony to be "not worthy of belief." Based on Husband's testimony and behavior in court, the court characterized Husband as intelligent and "very manipulative." The court accordingly afforded Husband's testimony no weight.

---

[1] We note that although numerous additional pre-trial motions were filed by the parties in the months leading up to trial, in the interest of conciseness, we have only addressed the most pertinent motions herein.

Following a thorough and detailed analysis of the Agreement's provisions, the trial court found the Agreement to be "valid in all respects." The court accordingly determined that the Agreement's provisions would dictate the division of the parties' assets and liabilities. Concerning the parenting plan, the court designated Wife the primary residential parent for the parties' children, noting that Husband had not sought such designation. The court also designated Wife as the sole decision-maker for the children. The court determined the amount of child support due pursuant to the Tennessee Child Support Guidelines, finding that the child support amount provided in the Agreement exceeded Husband's Guideline support obligation. The court also determined, however, that an upward deviation was appropriate based on the children's special needs. The court thus enforced the child support provisions in the Agreement, finding that the best interest of the children would be served by the upward deviation provided by the Agreement.

The trial court noted that Wife sought an award of attorney's fees based on a provision in the Agreement stating that fees necessary to enforce or defend the Agreement could be recovered from the other party. The court thus ordered Wife's attorney to prepare an itemized statement detailing the time spent enforcing and defending the Agreement.

On May 28, 2015, Wife filed a motion to alter or amend the trial court's judgment, seeking to correct certain typographical errors and to clarify the court's ruling. On June 5, 2015, Wife filed a motion seeking to establish the amount of her attorney's fee award as well as an award of expenses and discretionary costs. Wife attached to the motion an affidavit from her counsel and an itemized statement of attorney's fees. Husband filed a response, objecting to the amount of fees and expenses sought, and the court set Wife's motion for a hearing to determine fees and costs. On December 23, 2015, Husband filed a post-trial "Summary Judgment Motion to Dismiss Wife's Claim for Legal Fees and Incorporated Memorandum of Law," asking the trial court to find that Wife was not entitled to recover her attorney's fees because she "contested the enforceability of the child support provision in the parties' Postnuptial Agreement." The trial court denied this motion by order entered January 26, 2016. Husband sought to file an extraordinary appeal with this Court pursuant to Tennessee Rule of Appellate Procedure 10, but this Court denied his application.

On February 5, 2016, prior to the hearing regarding attorney's fees, Husband filed a "Second Motion for Judge Smith to Recuse Himself and Motion to Stay Trial." According to Husband, during a motion hearing held on January 29, 2016, the trial court judge committed an "irreparable compromise of the integrity, decorum and dignity of the courtroom" by stating on the record that he was "messing with" Husband. The trial court

comprehensively addressed and denied the recusal motion in an order entered on February 10, 2016. On February 22, 2016, Husband filed another "summary judgment" motion regarding Wife's claim for attorney's fees. Husband's motion was denied by order entered February 26, 2016, wherein the trial court found that the motion was filed subsequent to the trial and was thus untimely.

The hearing regarding Wife's award of attorney's fees was conducted on March 1, 2016. On June 7, 2016, the trial court entered an order awarding to Wife attorney's fees in the amount of $297,363 along with various costs. Husband filed a motion to alter or amend this award, and the trial court subsequently entered an order on August 24, 2016, reducing the attorney's fee award to $283,252. Husband timely appealed.

## II. Issues Presented

Husband presents the following two issues for our review, which we have restated slightly:

1.      Whether the trial court erred by awarding attorney's fees to Wife.

2.      Whether the trial court erred by denying Husband's motions seeking recusal of the trial court judge.

Wife presents the following additional issues for our review, which we have similarly restated:

3.      Whether Husband's issues should be deemed waived because his appellate brief fails to satisfy the requirements of Tennessee Rule of Appellate Procedure 27.

4.      Whether the trial court erred by declining to award to Wife the full amount of attorney's fees she incurred in enforcing and defending the Agreement.

5.      Whether Wife should be awarded attorney's fees on appeal.

## III. Standard of Review

Our standard of review is *de novo* with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *McCarty v. McCarty*, 863 S.W.2d 716, 719 (Tenn. Ct. App. 1992). No presumption of correctness attaches to the trial court's legal conclusions. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

As our Supreme Court has explained with respect to the interpretation of contracts:

> The interpretation of written agreements . . . is a matter of law that this Court reviews de novo on the record according no presumption of correctness to the trial court's conclusions of law. A cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties. In interpreting contractual language, courts look to the plain meaning of the words in the document to ascertain the parties' intent. This Court's initial task in construing the [agreement] at issue is to determine whether the language is ambiguous. If the language is clear and unambiguous, the literal meaning controls the outcome of the dispute. If, however, the words in a contract are susceptible to more than one reasonable interpretation, the parties' intent cannot be determined by a literal interpretation of the language.
>
> Contractual language "is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." *Farmers-Peoples Bank v. Clemmer,* 519 S.W.2d 801, 805 (Tenn. 1975). . . .
>
> When contractual language is found to be ambiguous, the court must apply established rules of construction to determine the intent of the parties. An ambiguous provision in a contract generally will be construed against the party drafting it. Furthermore, when a contractual provision is ambiguous, a court is permitted to use parol evidence, including the contracting parties' conduct and statements regarding the disputed provision, to guide the court in construing and enforcing the contract.

*Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611-12 (Tenn. 2006) (additional internal citations omitted).

Finally, with regard to *pro se* litigants, this Court has explained:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

7

The courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs. Accordingly, we measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers.

Pro se litigants should not be permitted to shift the burden of the litigation to the courts or to their adversaries. They are, however, entitled to at least the same liberality of construction of their pleadings that Tenn. R. Civ. P. 7, 8.05, and 8.06 provide to other litigants. Even though the courts cannot create claims or defenses for pro se litigants where none exist, they should give effect to the substance, rather than the form or terminology, of a pro se litigant's papers.

*Young v. Barrow*, 130 S.W.3d 59, 62-63 (Tenn. Ct. App. 2003) (internal citations omitted).

## IV. Waiver of Issues

As a threshold matter, Wife argues that Husband has waived his issues on appeal because he failed to satisfy the requirements of Tennessee Rule of Appellate Procedure 27(a)(7) and Rule 6 of the Rules of the Tennessee Court of Appeals, failed to cite to the record and applicable legal authority, and failed to include the recusal issue in his statement of the issues.

Our Supreme Court has explained that parties to an appeal must succinctly designate their issues and provide the appellate court with an argument pertinent to each issue on appeal. *See Waters v. Farr*, 291 S.W.3d 873, 919 (Tenn. 2009) ("[P]arties must thoroughly brief the issues they expect the appellate court to consider."). As the High Court has clarified:

It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.

*Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 615 (Tenn. 2010). Our Supreme Court has further elucidated:

An issue may be deemed waived, even when it has been specifically raised as an issue, when the brief fails to include an argument satisfying the requirements of Tenn. R. App. P. 27(a)(7).

*Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012). In addition, "[a]n issue not raised in an appellant's statement of the issues may be considered waived." *Champion v. CLC of Dyersburg, LLC*, 359 S.W.3d 161, 163 (Tenn. Ct. App. 2011).

In this matter, Wife argues that Husband's assertion that the trial court erred in denying his second motion for recusal is not properly before this Court because Husband did not include it in his statement of issues on appeal. Moreover, Wife claims that there is no argument within Husband's brief wherein he provides the information required by Tennessee Court of Appeals Rule 6, which states in pertinent part:

(a) Written argument in regard to each issue on appeal shall contain:

    (1)    A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, with citation to the record where the erroneous or corrective action is recorded.

    (2)    A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.

    (3)    A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.

    (4)    A statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found.

(b) No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.

Wife also asserts that Husband has failed to meet the requirements of Tennessee Rule of Appellate Procedure 27, which states in pertinent part:

(a)     Brief of the Appellant.  The brief of the appellant shall contain under appropriate headings and in the order here indicated:

(1)     A table of contents, with references to the pages in the brief;

(2)     A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;

* * *

(4)     A statement of the issues presented for review;

(5)     A statement of the case, indicating briefly the nature of the case, the course of proceedings, and its disposition in the court below;

(6)     A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;

(7)     An argument, which may be preceded by a summary of argument, setting forth:

(A)     the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and

(B)     for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a

separate heading placed before the discussion of
the issues) . . . .

(8)     A short conclusion, stating the precise relief sought.

Upon review, we determine Husband's brief to be notably deficient. It contains no statement of the case and an incomplete statement of the issues. Husband failed to include proper record citations in his brief. He also failed to clearly present argument with regard to his issues in accordance with the above-quoted procedural rules. We note that although Husband is proceeding *pro se* on appeal, he is a licensed attorney.

Despite these deficiencies, we determine that this is an appropriate case in which to exercise our discretion to waive the briefing requirements in order to adjudicate the issues and argument presented by Husband. *See* Tenn. R. App. P. 2; *Chiozza v. Chiozza*, 315 S.W.3d 482, 489 (Tenn. Ct. App. 2009) ("[T]here are times when this Court, in the discretion afforded it under Tenn. R. App. P. 2, may waive the briefing requirements to adjudicate the issues on their merits."). We do so in an effort to bring finality to these protracted divorce proceedings involving the interests of children. *See Chiozza*, 315 S.W.3d at 489.

## V.  Award of Attorney's Fees

The trial court determined the Agreement to be valid and enforceable and distributed the parties' assets and debts according to its terms. The trial court also awarded attorney's fees to Wife based upon a provision contained within the Agreement, which states:

> In the event of the filing of a divorce or separation action by either party against the other, each party shall pay his or her own attorneys fees and expenses incurred in such action, including pendente lite fees and expenses, except as necessary to enforce or defend the terms of this Agreement, in which case the prevailing party shall be entitled to reasonable fees and expenses incurred to enforce or defend the terms herein.

(Paragraph numbering omitted.)

Husband asserts that Wife is not entitled to an award of attorney's fees in this matter because she "contested" the child support provision in the Agreement by asking the trial court to order child support according to the Tennessee Child Support Guidelines. According to Husband, Wife cannot enforce the attorney's fee provision in the Agreement because she did not seek to enforce the Agreement "in toto." Wife argues

11

that she did seek to enforce the entire Agreement and only asked the court to set child support in accordance with the Guidelines as an alternative. From our thorough review of the record, we agree with Wife's assertion that she consistently sought to enforce the parties' Agreement while Husband repeatedly contested its validity.

In her original complaint, Wife asked the trial court to distribute the parties' assets and liabilities and to set child support in accordance with the terms of the Agreement. In her amended complaint, Wife, *inter alia*, asked that Husband be ordered to "pay child support for the minor children in accordance with the parties' Postnuptial Agreement dated December 17, 2011 and the child support guidelines." In Wife's motion seeking to amend her complaint, she explained that the requested amendment was in response to Husband's answer wherein he claimed that the Agreement was invalid and unenforceable. Thereafter, Wife continually and successfully sought to have the Agreement enforced, despite Husband's persistent objections to the Agreement's validity. Therefore, we determine that Wife's request for attorney's fees was consistent with her attempts to "enforce or defend" the terms of the Agreement.

Furthermore, we note that "[p]arties are free to agree 'to a child support obligation that exceeds the amount payable directly to an obligee parent under the Guidelines . . . <u>as long as the resulting child support meets or exceeds the amount mandated under the Guidelines</u>." *Blackshear v. Blackshear*, No. E2012-02499-COA-R3-CV, 2014 WL 1092209, at *5 (Tenn. Ct. App. Mar. 19, 2014) (quoting *Jones v. Jones,* No. M2009-01512-COA-R3-CV, 2010 WL 2025403, at *4 (Tenn. Ct. App. May 20, 2010)) (in turn quoting *Kesser v. Kesser,* 201 S.W.3d 636, 642 (Tenn. 2006)), *superseded by statute on other grounds as stated in Moore v. Moore,* 254 S.W.3d 357, 360 n.5 (Tenn. 2007)) (emphasis added). As this Court has previously explained with regard to private agreements setting an amount of child support:

> When reviewing the parties' agreement, the trial court must use the Child Support Guidelines to review the adequacy of the child support provision. The Child Support Guidelines, when properly applied, create a rebuttable presumption of the proper award of child support. At the time of the divorce decree in this case, Tennessee Code Annotated section 36-5-101(e)(1)(A) provided:
>
> > If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child(ren) or the equity between the parties. Findings that the application of the guidelines would

12

be unjust or inappropriate shall state the amount of support that would have been ordered under the child support guidelines and a justification for the variance from the guidelines.

"These findings must be contained in the trial court's order in addition to the amount of child support that would have been required under the guidelines and the reason for the deviation from this amount." *Neal v. Neal,* No. M2003-02703-COA-R3-CV, 2005 WL 1819214, at *2 (Tenn. Ct. App. Aug. 2, 2005). In the absence of such findings, the Guidelines are mandatory.

*State ex rel. Flatt v. Flatt*, No. W2007-01376-COA-R3-CV, 2008 WL 794521, at *6 (Tenn. Ct. App. Mar. 27, 2008) (other internal citations omitted).

In the instant case, the trial court properly determined the amount of child support that would be awarded to Wife pursuant to the Guidelines in order to evaluate the adequacy of the child support provision contained in the Agreement. Following its determination that the amount of child support provided in the Agreement would exceed that due under the Guidelines, the court then determined whether this was an appropriate case for an upward deviation. Based on the special needs of the parties' children and the extraordinary expenses associated with their care, the court determined that an upward deviation was warranted and in the best interest of the children. The court further determined that a "strict application of the guidelines would be both unjust and inappropriate in this case." We conclude that the trial court appropriately considered the Tennessee Child Support Guidelines when evaluating the child support provision contained within the parties' Agreement. We further determine that such consideration did not affect Wife's steadfast position concerning enforcement of the Agreement. We accordingly conclude that Husband's argument is unavailing.

Wife contends that the trial court erred by failing to award her the entire amount of attorney's fees she incurred defending and enforcing the Agreement, based on the above-quoted contractual provision. The trial court only awarded to Wife a portion of her fees and expenses sought. As our Supreme Court has recently explained regarding the enforcement of a contractual fee award provision in a post-divorce action:

Our courts long have observed at the trial court level that parties are contractually *entitled* to recover their reasonable attorney's fees when they have an agreement that provides the prevailing party in a litigation is entitled to such fees. See, e.g, Seals v. Life Inv'rs Ins. Co. of Am., No. M2002-01753-COA-R3-CV, 2003 WL 23093844, at *4 (Tenn. Ct. App.

Dec. 30, 2003); <u>Hosier v. Crye-Leike Commercial, Inc.</u>, No. M2000-01182-COA-R3-CV, 2001 WL 799740, at *6 (Tenn. Ct. App. July 17, 2001). In such cases, the trial court does not have the discretion to set aside the parties' agreement and supplant it with its own judgment. See <u>Christenberry v. Tipton</u>, 160 S.W.3d 487, 494 (Tenn. 2005) ("A court 'cannot under the guise of construction make a new and different contract for the parties.'") (quoting <u>Memphis Furniture Mfg. Co. v. Am. Cas. Co.</u>, 480 S.W.2d 531, 533 (Tenn. 1972)). The sole discretionary judgment that the trial court may make is to determine the amount of attorney's fees that is reasonable within the circumstances. See <u>Hosier</u>, 2001 WL 799740, at *6; <u>Albright v. Mercer</u>, 945 S.W.2d 749, 751 (Tenn. Ct. App. 1996); <u>Airline Constr. Inc. v. Barr</u>, 807 S.W.2d 247, 270 (Tenn. Ct. App. 1990); see also <u>Connors v. Connors</u>, 594 S.W.2d 672, 676 (Tenn. 1980) (setting out the appropriate factors to be used as guides in fixing reasonable attorney's fees); Tenn. Sup. Ct. R. 8, Rule 1.5.

*Eberbach v. Eberbach*, ___ S.W.3d ___, ___, No. M2014-01811-SC-R11-CV, 2017 WL 2255582, at *6 (Tenn. May 23, 2017). Because the trial court has discretion to determine "the amount of attorney's fees that is reasonable within the circumstances," the court is not required to award the entire amount of fees sought. *See id.* Upon thorough review of the trial court's fee award in this matter, we conclude that the trial court did not abuse its discretion in determining the appropriate amount of the award.

## VI. Recusal

Husband argues that the trial court judge erred in failing to grant recusal. Accordingly, Husband asserts that upon remand, the case should be transferred to another judge. We disagree.

We review the trial court's disposition of a motion for recusal under a *de novo* standard of review. *See* Tenn. Sup. Ct. R. 10B § 2.06. As our Supreme Court has explained:

Tennessee Supreme Court Rule 10, Canon 3(E)(1) states, "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (a) the judge has a personal bias or prejudice concerning a party or a party's lawyer . . . ."[2] We have held that a recusal motion should be granted when "the judge has any doubt as to his or her ability to preside impartially in the case" or "'when a person of ordinary prudence in the

---

[2] Effective July 1, 2012, this provision is located within Tenn. Sup. Ct. R. 10, Canon 2.11(A)(1).

judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Davis* [*v. Liberty Mut. Ins. Co.*], 38 S.W.3d [560,] 564-65 [(Tenn. 2001)] (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). Even if a judge believes he can be fair and impartial, the judge should disqualify himself when "'the judge's impartiality might be reasonably questioned'" because "the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Id.* (quoting Tenn. Sup. Ct. R. 10, Canon 3(E)(1)).

*Bean v. Bailey*, 280 S.W.3d 798, 805 (Tenn. 2009); *see Malmquist v. Malmquist*, 415 S.W.3d 826, 838-39 (Tenn. Ct. App. 2011). "Adverse rulings and 'the mere fact that a witness takes offense at the court's assessment of the witness,' do not provide grounds for recusal, however, in light of the 'adversarial nature of litigation.'" *Watson v. City of Jackson*, 448 S.W.3d 919, 929 (Tenn. Ct. App. 2014) (quoting *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565 (Tenn. 2001)).

In its order denying Husband's second motion for recusal, the trial court found it "harbor[ed] no ill-will, prejudice, or any other pre-conceived thoughts toward either party in the course of the proceedings." The trial court also determined that it could be objectively impartial and that no person of ordinary prudence with full knowledge of the facts known to the judge would find a reasonable basis for questioning the court's impartiality. Specifically, the court found that no reasonable person would find the exchange between the court and Husband, during which the judge said, "Well, I was just messing with you, Mr. Pandey," reason to believe the court was biased. We agree.

The trial court explained the context of its comment as follows:

> To put this discussion in light of the full context of the case, Mr. Pandey has filed and argued a vast array of different motions too numerous to list here. The Court and Mr. Pandey have disagreed on many topics concerning his case, most of which have resulted in adverse rulings against Mr. Pandey. Mr. Pandey has been given every opportunity to be heard and to argue all of his motions as well as his case-in-chief. The Court admits it made this comment in light of the entire case and in light of the fact that the Court and Mr. Pandey have seldom, if ever, agreed. A reasonable person, in light of the history of this case, fully aware of the amount of motions filed and argued, as well as the arguments made during final hearing, would not find that this Court has been biased or impartial against Mr. Pandey. This Court's multiple adverse rulings, even if erroneous and continuous, do not, *ipso facto*, amount to bias or prejudice, nor has the Court, in its

opinion, issued rulings and orders whose cumulative effect have resulted in repeated misapplication of fundamental, rudimentary legal principles that have favored Ms. Pandey, either procedurally or substantively, over Mr. Pandey.

In addition, the Court finds that the statement, when construed in the context of all the facts and circumstances in determining whether a reasonable person would construe the comment as indicating partiality on the merits of the case, does not rise to such a level as to indicate any impartiality or bias. The Court understands that Mr. Pandey may harbor frustration towards the Court for his failure to obtain favorable rulings; however, failing to obtain favorable rulings does not equate to suffering violations of due process. The Court's statement, in light of all the facts, shows only that the Court and Mr. Pandey simply have not and do not agree with respect to the issues in this case. Mr. Pandey, however, indicates that making such a statement compromises the decorum and dignity of the courtroom in the most serious of situations. This Court takes every party's situation seriously; not just in the case at bar, but also in every case that is filed. Mr. Pandey's case is no different than the many other cases that are tried before this Court, and the Court submits that he has been treated no differently than any other litigant. Mr. Pandey may believe that this Court has been insensitive to his situation, and although Mr. Pandey apparently feels that this Court lacks sympathy to his cause, in which event the Court strongly disagrees, this basis does not constitute sufficient grounds for recusal.

As this Court has previously elucidated with regard to bias:

Generally, the terms "bias" and "prejudice" refer to a state of mind or attitude that works to predispose a judge for or against a party. *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). However,

> [n]ot every bias, partiality, or prejudice merits recusal. To disqualify, prejudice must be of a personal character, directed at the litigant, "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from participation in the case."

\* \* \*

16

> If the bias is based upon actual observance of witnesses and evidence given during the trial, the judge's prejudice does not disqualify the judge.  However, if the bias is so pervasive that it is sufficient to deny the litigant a fair trial, it need not be extrajudicial.  *Id*. (emphasis added) (quotations and citations omitted); *see also Spain v. Connolly*, 606 S.W.2d 540, 544 (Tenn. Ct. App. 1980).
>
> Generally, in order to justify recusal, any alleged bias must arise from extrajudicial sources and not from events or observations during litigation of a case.  If the bias is alleged to stem from events occurring in the course of the litigation of the case, the party seeking recusal has a greater burden to show bias that would require recusal, i.e., that the bias is so pervasive that it is sufficient to deny the litigant a fair trial.

*McKenzie v. McKenzie*, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *3 (Tenn. Ct. App. Feb. 11, 2014).

Upon our careful and thorough review of the record, including the transcript of the trial conducted in this matter, we discern no indication of bias or prejudice expressed or implied by the judge.  *See, e.g., Watson*, 448 S.W.3d at 933 ("Although we are cognizant of the fact that the trial judge declined to grant any of [the appellant's] *pro se* post-trial motions, it is well-settled that '[a]dverse rulings by a trial judge . . . are not usually sufficient to establish bias.'" (quoting *Ingram v. Sohr*, No. M2012-00782-COA-R3-CV, 2013 WL 3968155, at *31 (Tenn. Ct. App. July 31, 2013)); *Malmquist*, 415 S.W.3d at 840 ("The fact that [the trial court judge] helmed this litigation, without apparent bias, even in the face of difficult litigants and protracted litigation, supports his discretionary decision to remain on the case to see it concluded.").  We thus conclude that the trial court did not err by denying Husband's motions for recusal.  As such, no basis exists for requiring that this case be heard by a different judge upon remand.

## VII.  Attorney's Fees on Appeal

Finally, Wife asserts that she should be awarded attorney's fees incurred in her defense of this appeal, which she characterizes as frivolous.  Wife also asserts that she should receive an award of attorney's fees because she is, in large part, still being forced to defend the Agreement.

Tennessee Code Annotated § 27-1-122 provides:

When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

*See Young v. Barrow*, 130 S.W.3d 59, 67 (Tenn. Ct. App. 2003) ("A frivolous appeal is one that is devoid of merit . . . or one that has no reasonable chance of succeeding."). We determine, in our discretion, that Husband's appeal was not so devoid of merit as to be deemed frivolous. *See Eberbach*, ___ S.W.3d ___, ___, 2017 WL 2255582, at *4 (citing *Chiozza*, 315 S.W.3d at 493 ("The decision to award damages for the filing of a frivolous appeal [under section 27-1-122] rests solely in the discretion of this Court.")). "This discretion is exercised 'sparingly so as not to discourage legitimate appeals.'" *See Eberbach*, ___ S.W.3d ___, ___, 2017 WL 2255582, at *4 (quoting *Whalum v. Marshall*, 224 S.W.3d 169, 181 (Tenn. Ct. App. 2006)). We therefore decline to grant Wife an award of attorney's fees pursuant to Tennessee Code Annotated § 27-1-122.

Wife is, however, entitled to an additional award of attorney's fees on appeal based on the above-quoted fee-shifting provision contained in the Agreement. *See Eberbach*, ___ S.W.3d at ___, 2017 WL 2255582, at *6 (holding that this Court has no discretion regarding whether to award attorney's fees when the parties have a valid agreement that "requires an award of reasonable attorney's fees to a prevailing or successful party."). In the instant action, Wife was the prevailing party at both the trial and appellate court levels. *Id*. at *8 ("By obtaining a judgment in her favor at the trial court and having that judgment affirmed by the Court of Appeals, Wife 'achieve[d] the primary benefit sought' in the proceeding, and the judgment in her favor 'modifi[ed] the opposing party's behavior in a way that provide[d] a direct benefit' to her.") (quoting *Fannon v. City of LaFollette*, 329 S.W.3d 418, 432 (Tenn. 2010)). Pursuant to the Agreement, Wife, as the prevailing party, is entitled to her "reasonable fees and expenses incurred to enforce or defend" the terms of the Agreement. We therefore remand this matter to the trial court for a determination and award of the reasonable amount of fees incurred by Wife on appeal in defending and enforcing the terms of the Agreement.

## VIII. Conclusion

For the reasons stated above, we affirm the trial court's judgment in all respects. We further determine that Wife is entitled to an additional award of attorney's fees on appeal. We therefore remand this matter to the trial court for a determination and award of the reasonable amount of fees incurred by Wife on appeal in defending and enforcing the terms of the Agreement. Costs on appeal are taxed one-half to the appellant, Aneel

18

Madhukar Pandey, and one-half to the appellee, Belinda Butler Pandey. This case is remanded to the trial court for collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE