IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 12, 2019

**IN RE ESTATE OF HENRY C. ELLIS, III AND IN RE
CONSERVATORSHIP OF HENRY C. ELLIS, III**

**Appeal from the Circuit Court for Shelby County**
**No. CT-004270-18, CT-003838-18        Gina C. Higgins, Judge**

_____

**No. W2019-01431-COA-T10B-CV**

_____

This is an interlocutory appeal as of right, pursuant to Rule 10B of the Rules of the Supreme Court of Tennessee, filed by Nancy Neely ("Petitioner"), seeking to recuse the trial judge in these companion cases involving a conservatorship and an estate. Having reviewed the petition for recusal appeal filed by Petitioner, and the answer ordered by this Court, and finding no error in the orders of the Circuit Court for Shelby County ("the Trial Court") denying recusal, we affirm.

**Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right;**
**Judgment of the Circuit Court Affirmed**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which RICHARD H. DINKINS and ARNOLD B. GOLDIN, JJ., joined.

Richard W. Parks, Memphis, Tennessee, and Charles C. Exum, Jackson, Tennessee, for the appellant, Nancy Neely.

Jef Feibelman, Memphis, Tennessee, for the appellees, Beth W. Bradley and Irma Merrill Stratton.

Kirk A. Caraway, Memphis, Tennessee, for the appellees, Betty Frye and Vera Poag.

Della K. Ellis, Collierville, Tennessee, pro se appellee.

# OPINION

Petitioner filed a petition for recusal appeal in this Court on August 9, 2019, seeking review of the July 19, 2019 and August 2, 2019 orders of the Circuit Court for Shelby County ("the Trial Court") denying Petitioner's second and third motions for recusal filed in the proceedings below. Petitioner also requests a stay of the proceedings below. Given our disposition of the petition for recusal appeal, the motion for a stay is hereby DENIED.

These cases originated in June of 2015 when Betty Fry and Vera Poag, two of the children of Henry C. Ellis, III, filed a petition in the Probate Court for Shelby County ("the Probate Court") to open a conservatorship for Mr. Ellis. At that time, Petitioner, another of Mr. Ellis's children, held a power of attorney enabling her to act as Mr. Ellis's attorney-in-fact. A temporary conservator was appointed for Mr. Ellis, and Petitioner's authority under a healthcare power of attorney was suspended. In September of 2016, a conservator of the person was appointed for Mr. Ellis. In March of 2018, the Probate Court found that Petitioner "in her capacity as [Mr. Ellis's] Durable Power of Attorney, is and has been interfering with [Mr. Ellis's] care and that there is good cause to revoke the powers granted to Petitioner in [the] Durable Power of Attorney . . . ." The Probate Court appointed Irma Merrill Stratton to serve as conservator of Mr. Ellis's estate and as co-conservator of his person. Petitioner was ordered to file an accounting within thirty days. In June of 2018, the Probate Court entered an order finding that Petitioner had not complied with the order to file an accounting. Petitioner was again ordered to file an accounting.

In July of 2018, Mr. Ellis died, and Petitioner filed a petition seeking to open an estate. Attorney Richard Parks filed a notice of appearance as counsel for Petitioner. In August of 2018, the Probate Court Judge, Judge Kathleen N. Gomes, entered an order recusing herself from both the conservatorship case and the estate case. The cases were transferred to the current Trial Court. After a hearing, the Trial Court stated that it would not appoint Petitioner as personal representative of the estate.[1] The Trial Court also held a hearing on a fee petition filed by the conservator, and ultimately awarded the conservator fees.

Further hearings were scheduled for February of 2019, but the proceedings were stayed when Petitioner filed a motion for recusal on February 18, 2019. Petitioner filed an amended motion for recusal on February 22, 2019. The Trial Court denied the first motion for recusal by order entered on May 20, 2019. In the May 20, 2019 order, the

---

[1] The parties allege that an order has not yet been entered with regard to Petitioner's petition to open an estate. For further information please see paragraph six of the Trial Court's July 19, 2019 order as quoted later in this Opinion.

Trial Court found that Petitioner failed to comply with Rule 10B of the Rules of the Supreme Court and that the petition was not well-taken and should be denied. The May 20, 2019 order noted that Petitioner had filed an amended motion for recusal and stated that the "court reserves ruling on any of the substantive issues alleged in this original motion, pending responses and a hearing."

In her amended motion for recusal, Petitioner alleged, among other things, that in 2014 her attorney was a candidate for election to the Shelby County Probate Court position now occupied by Judge Kathleen Gomes and that her attorney had been "a very outspoken, well publicized harsh critic of not only Judge Gomes but also the Memphis Bar Association which endorsed her election," that the current Trial Court Judge Gina Higgins was a candidate for her present office during that same election, that other attorneys involved in these cases are "arguably prominent members of the powerful, well-funded and politically influential 'legal elite' of the local bar with clients to match," that Judge Higgins and Judge Gomes are "present or former members of the Memphis Bar Association," that Petitioner's attorney is a "simple, 'street-level' solo practicing attorney" who has not been a member of the Memphis Bar Association for approximately 28 years and is not a member of the "legal elite," that there is a "stark contrast as to how the Trial Judge Higgins handles matters for opposing counsel versus how it handles matters brought by Attorney Parks on behalf of Nancy Neely," that the estate case remains in "judicial limbo," that the Trial Court had engaged in *ex parte* communications with another party, and that the Trial Court improperly allowed an attorney for a subpoenaed witness to remain in court despite Petitioner's attorney calling for "the Rule."

After a hearing on the amended motion for recusal, the Trial Court entered its order on July 19, 2019, denying recusal after finding and holding:

> 1. Petition devotes at least 14 of the 18 pages of the motion in his summary of facts to the history of the case in Probate Court, prior to any involvement by this court. This is not a proper basis for recusal of the court.
> 2. A large portion of the remainder of Petitioner's summary of facts is devoted to complaints regarding the former judge's rulings and this court's rulings on motions and other proceedings in the courtroom. This is not a proper basis for recusal of the court, but is more appropriately a subject for appeal of any such rulings.
> 3. Additionally, Petitioner makes much of the membership of the former judge and this judge in the local bar association. Counsel for Petitioner seems to allege that inherent in this membership there is some conspiracy against him because he has not been a member of the association for many years. He also makes references to the 2014 election cycle in which the former judge, with whom he was in a contested race, and this judge were all up for election. No factual basis has been established to either create an

appearance of impropriety or of misconduct.  This reference is not a proper basis for recusal of the court.

4. In this amended motion, Petitioner cites to violations by the court of Rule 10B of the Tennessee Supreme Court Rules alleging, *inter alia*, that the court repeatedly demonstrated substantial prejudice towards the Petitioner and bias in favor of the Co-Conservator Stratton and her attorney Bradley. Moreover, that the court has demonstrated indifference to the laws and principles governing the legal issues inherent in the case, and that the court cannot be fair and impartial.  Finally, Petitioner alleges that the court has been involved in ex-parte communications with at least one of the parties.

5. These Conservatorship and Estate matters were transferred to this court as a consequence of the recusal of the prior judge due to conflict between the judge and counsel for Petitioner.  This court had no involvement in those matters.  The issues presented are complex and complicated and are fueled by the hostility and history of the parties and the lawyers.  This court had no involvement in that history.  After the case was transferred to this court, the court has convened a multiplicity of hearings and status conferences to try and move the case along.

6. This court rules on the facts and law presented to it by the parties. Petitioner's reference to the court disregarding the law involved the court's ruling that Petitioner, Nancy Neely, would be disqualified to serve as the Personal Representative of the Estate.  The court based its ruling upon the facts and conduct of the parties.  Co-Counsel Exum argued to the court that there was case law indicating to the contrary and provided the court with a case.  The court agreed to review the case prior to final ruling and entry of the order.  That order remains outstanding.  Meanwhile, the court attempted a hearing to resolve the issues of the Conservatorship, its accounting and outstanding fees.  After taking some proof in the case, that attempt was unsuccessful due to the Petitioner filing the motions to recuse.

7. From the very beginning of the case in this court, every issue has been met with opposition, including the issue of the propriety of the transfer to this division.  This court had no involvement with the transfer process, but the transfer created motions and hearings to establish that the rules were followed.  All parties consented and agreed that the transfer was proper.  It is not clear why it is being raised in the motion.

8. The court determined that there was no justifiable reason for further delay in beginning the hearings on the conservatorship accounting and expenses.  Attorney Parks advised that Attorney Exum had the flu and the doctor wanted him to stay home for a few days.  The court determined that it could begin the hearings, but the matter had to be continued to the following week.  The court felt that this continuation would allow for the appearance of Attorney Exum.  After considering the specific issue to be heard and the schedules of multiple lawyers, the court resumed hearing the

matter. The court determined there was no prejudice to Petitioner, who was ably represented by Attorney Parks.

9. As to allegations of ex parte communication, the clerks are the buffer between the litigants, lawyers, and the judges. Daily, Clerks handle communications from those individuals. It is their responsibility, initially, to ensure that docketing and scheduling matters are handled and the court is notified, where appropriate. This court does state that it has no recall of having received any out of court communications from any of the pro se litigants. The particular communication at issue was discussed openly in court. It involved reasons why one of the parties would not be present in court. All parties were apprised of the situation, discussing it on the record. In the motion, counsel for Petitioner states that the court "may" have received these communications (ex parte). No proof was offered to evidence that the court was in receipt of the communication. This allegation is not a basis for recusal.

10. Petitioner also raised that the court allowed an attorney for one of the subpoenaed witnesses to sit in the courtroom. Petitioner cites to no law that would have required that the attorney whose witness was contesting the subpoena be required to be excused from the courtroom.

11. Petitioner makes many specific and general allegations that point out her distrust and distain for the courts and the legal community. These allegations shade her view of any ruling, especially rulings that are not favorable to her. These factors do not justify recusal of the trial judge. They may be the subject of an appeal to be reviewed by the appellate courts, but they do not justify recusal.

12. This court has not been permitted to finalize any matter in this case. Every hearing ends in a continuance for some reason; a need for additional information; scheduling and timing issues, and in this case, the requirement that the court issue written rulings on the two motions for recusal. This court notes that there are other challenges in resolving issues in the case, not the least of which include the availability of some eight or so lawyers who are involved in the case.

13. Petitioner appears to be grasping at straws to find a judge that she is happy with. There is no guarantee that she will not run out of judges and yet be unhappy. The better course is to allow the case to be heard, raising all objections and file an appeal, as desired, to allow the appellate court to review the matters decided in the trial.

Petitioner filed a third motion for recusal on August 2, 2019. The Trial Court entered its order that same day again denying recusal. In the August 2, 2019 order, the Trial Court specifically found and held:

1. Petitioner files this her third Petition for this court to recuse itself in the herein litigation. This court entered its second order denying motion to recuse on 19 July 2019, wherein the court found that Petitioner devoted at least 14 of the 18 pages of the motion in his summary of facts to the history of the case in Probate Court, prior to any involvement by this court. Further, that a large portion of the remainder of Petitioner' s summary of facts was devoted to complaints regarding the former judge's rulings and this court's rulings on motions and other proceedings in the courtroom.

2. The court finds that Petitioner again devotes a substantial amount of her third motion to verbiage [sic] repeating much of what was previously expressed in prior motions and denied as a basis for recusal.

3. Specifically, in this third motion, Petitioner cites three reasons for the court to recuse: 1) substantial prejudice against Petitioner and her attorney; 2) substantial bias for opposing counsel and co-conservator and her attorney; and 3) indifference to the law. The court addressed and ruled on each of these reasons in its prior ruling. Nothing has changed and there have been no court proceedings since the court's ruling.

4. This court continues to state that it is fair and impartial to all litigants and their attorneys. Each case and all individuals appearing before the court are accorded the same respect and are treated in accordance with the facts and behavior as they apply to those individuals.

5. If, as indicated by Attorney Parks, he did not receive an email copy or hard copy of the court's 19 July 2019 ruling, it would have been an oversight or inadvertence by the clerk's office, which is charged with forwarding the court's entered orders.

6. Petitioner also charges that the court thinks she knows the facts of this case, but does not. While the court is not sure of what this statement is about, the court is assured that whatever facts any of the parties desire [sic] to have brought to the court's attention, those facts will be presented in due course as part of the proof in the case.

7. Petitioner did include in her affidavit in support of the motion to recuse, a statement that the motion is not being presented for any improper purpose or to cause needless delay or increase in costs. However, this court does determine that the Petitioner's serial presentment of repetitious motions to recuse is designed to delay the court's advancement of these cases.

8. Again, this court finds that it has not been permitted to finalize any matter in this case. The filing of this third motion to recuse prevents movement.

9. Given a chance to have the case properly litigated may surprise the Petitioner and her attorney or it may not. Either way, this case needs to be tried and all parties given an opportunity to appeal if dissatisfied with the results.

Petitioner filed her petition for recusal appeal in this Court on August 9, 2019. Petitioner's petition for recusal appeal alleges that recusal is proper because of the Trial Court Judge's participation in the 2014 election, because of non-favorable orders entered by the Trial Court Judge against Petitioner, because the estate case "has been held in abeyance for approximately 10 months . . . ," because no further hearing or action has been taken with regard to the conservatorship accounting, because Petitioner allegedly failed to receive a copy of the July 19, 2019 order denying recusal, and because the Trial Court Judge allegedly failed to give Petitioner's third motion for recusal "the serious, careful and impartial consideration the law requires."

By Order entered on August 27, 2019, this Court ordered the respondents to file an answer to the petition for recusal appeal. An answer was filed on September 4, 2019, in compliance with our Order.

ANALYSIS

We have determined in this case after a review of the petition and supporting documents submitted with the petition and the answer ordered by this Court, that additional briefing, and oral argument are unnecessary to our disposition because the record provided by Petitioner does not demonstrate error by the Trial Court Judge. *See* Tenn. Sup. Ct. R. 10B, § 2.05 ("If the appellate court, based upon its review of the Petition for recusal appeal and supporting documents, determines that no answer from the other parties is needed, the court may act summarily on the appeal. Otherwise, the appellate court shall order that an answer to the petition be filed by the other parties. The court, in its discretion, also may order further briefing by the parties within the time period set by the court."); § 2.06 ("An accelerated interlocutory appeal shall be decided by the appellate court on an expedited basis. The appellate court's decision, in the court's discretion, may be made without oral argument.").

We review a trial court's ruling on a motion for recusal under a *de novo* standard of review with no presumption of correctness. Tenn. Sup. Ct. R. 10B § 2.01. "The party seeking recusal bears the burden of proof, and 'any alleged bias must arise from extrajudicial sources and not from events or observations during litigation of a case.'" *Neamtu v. Neamtu*, No. M2019-00409-COA-T10B-CV, 2019 WL 2849432, at *2 (Tenn. Ct. App. July 2, 2019), *no appl. perm. appeal filed*, (quoting *Williams by & through Rezba v. HealthSouth Rehab. Hosp. N.*, No. W2015-00639-COA-T10B-CV, 2015 WL 2258172, at *5 (Tenn. Ct. App. May 8, 2015), *no appl. perm. appeal filed*). As this Court explained in *Neamtu v. Neamtu*:

> The party seeking recusal bears the burden of proof. *Williams*, 2015 WL 2258172, at *5; *Cotham v. Cotham*, No. W2015-00521-COA-T10B-CV,

2015 WL 1517785, at *2 (Tenn. Ct. App. Mar. 30, 2015) (*no perm. app. filed*). "[A] party challenging the impartiality of a judge 'must come forward with some evidence that would prompt a reasonable, disinterested person to believe that the judge's impartiality might reasonably be questioned.'" *Duke*, 398 S.W.3d at 671 (quoting *Eldridge v. Eldridge*, 137 S.W.3d 1, 7-8 (Tenn. Ct. App. 2002)). When reviewing requests for recusal alleging bias, "it is important to keep in mind the fundamental protections that the rules of recusal are intended to provide." *In re A.J.*, No. M2014-02287-COA-R3-JV, 2015 WL 6438671, at *6 (Tenn. Ct. App. Oct. 22, 2015), *perm. app. denied* (Tenn. Feb. 18, 2016). "**The law on judicial bias is intended 'to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality, or favor.**'" *Id.* (quoting *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009)).

The terms "bias" and "prejudice" usually refer to a state of mind or attitude that works to predispose a judge for or against a party, but not every bias, partiality, or prejudice merits recusal. *Watson v. City of Jackson*, 448 S.W.3d 919, 929 (Tenn. Ct. App. 2014) (citing *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994)). "'**Even though the judge is expected to have no bias at the beginning of the trial, he must, perforce, develop a bias at some point in the trial; for the decision at the conclusion of the trial is based upon the impressions, favorable or unfavorable, developed during the trial.**'" *Id.* at 933 (quoting *Spain v. Connolly*, 606 S.W.2d 540, 544 (Tenn. Ct. App. 1980)). To merit disqualification, the prejudice must be of a personal character, directed at the litigant, and stem from an extrajudicial source resulting in an opinion on the merits on some basis other than what the judge learned from participation in the case. *Id.* at 929. "A trial judge's opinions of the parties or witnesses that are based on what he or she has seen at trial are not improper and 'generally do[ ] not warrant recusal.'" *Id.* at 933 (quoting *Neuenschwander v. Neuenschwander*, No. E2001-00306-COA-R3-CV, 2001 WL 1613880, at *11 (Tenn. Ct. App. Dec. 18, 2001)).

*Neamtu*, 2019 WL 2849432, at **2-3 (quoting *In re Samuel P.*, No. W2016-01592-COA-T10B-CV, 2016 WL 4547543, at *2 (Tenn. Ct. App. Aug. 31, 2016), *no appl. perm. appeal filed.*) (emphasis in original)

In her motions for recusal, Petitioner makes much of the fact that her attorney was a candidate for the judicial position now occupied by Judge Kathleen Gomes and that the current Trial Court Judge also was a candidate during that election. Importantly, we note that Judge Kathleen Gomes did indeed recuse herself from these cases and that the current Trial Court Judge adequately and appropriately addressed these allegations in both the July 19, 2019 order denying recusal and the August 2, 2019 order denying recusal and specifically stated in the July 19, 2019 order: "No factual basis has been established to either create an appearance of impropriety or of misconduct." We agree. Petitioner failed to carry her burden of proof showing that the fact that the current Trial Court Judge was a candidate during the same election as Petitioner's attorney would prompt a reasonable disinterested person to believe that the Trial Court Judge's impartiality might be questioned. Furthermore, we note that this election occurred in 2014 and Petitioner certainly knew that her attorney and the current Trial Court Judge were both candidates during the 2014 election at the time that these cases were transferred to the current Trial Court Judge in 2018. Yet, Petitioner waited until unfavorable rulings had been entered against her before filing for recusal.

As this Court has explained: "recusal motions must be filed promptly after the facts forming the basis for the motion become known, and the failure to assert them in a timely manner results in a waiver of a party's right to question a judge's impartiality." *Duke v. Duke*, 398 S.W.3d 665, 670 (Tenn. Ct. App. 2012) (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998) (internal citations omitted)). "[A] party may lose the right to challenge a judge's impartiality by engaging in strategic conduct" such as waiting for an unfavorable ruling before filing for recusal. *Id.* Petitioner waited until after receiving unfavorable rulings before filing for recusal based upon the 2014 election, and as such, waived asserting this ground.

Petitioner also makes much of the fact that the Trial Court Judge is, allegedly, a member of the Memphis Bar Association along with other attorneys involved in these cases. Rule 10, Canon 3 of the Rules of the Supreme Court provides:

**Rule 3.1  Extrajudicial Activities in General.** A judge may engage in personal or extrajudicial activities, except as prohibited by law or this Code. However, when engaging in such activities, a judge shall not:

(A) participate in activities that will interfere with the proper and timely performance of the judge's judicial duties;
(B) participate in activities that will lead to frequent disqualification of the judge;

- 9 -

(C) participate in activities that would appear to a reasonable person to undermine the judge's independence, integrity, or impartiality;

(D) engage in conduct that would appear to a reasonable person to be coercive; or

(E) make inappropriate use of court premises, staff, stationery, equipment, or other resources.

R. Sup. Ct. 10, Canon 3.1. Comment 2 to this particular Rule provides: "Participation in both law-related and other extrajudicial activities helps integrate judges into their communities, and furthers public understanding of and respect for courts and the judicial system." R. Sup. Ct. 10, Canon 3.1, cmt. 2. Furthermore, as was discussed in *Clemons v. Nesmith*:

> "The mere existence of a friendship between a judge and an attorney is not sufficient, standing alone, to mandate recusal." *State v. Cannon*, 254 S.W.3d 287, 308 (Tenn. 2008); *see also State v. Madden*, No. M201202473–CCA–R3–CD, 2014 WL 931031, at \*7 (Tenn. Crim. App., filed Mar. 11, 2014) ("Simply establishing that a trial judge is acquainted with a lawyer or other person connected to a case does not, without more, suffice to establish an abuse of discretion in the denial of a recusal motion."). As such, "[t]he Code of Judicial Conduct does not require judges to remain isolated from other members of the bar and from the community." *Cannon*, 254 S.W.3d at 308. We note, however, "[w]hen engaging in physical and online contact with members of the community," a judge "must at all times remain conscious of the solemn duties [he or she] may later be called upon to perform." *Madden*, 2014 WL 931031, at \*8.

*Clemons v. Nesmith*, No. M2016-019710COA-T10B-CV, 2017 WL 480705, at \*8 (Tenn. Ct. App. Feb. 6, 2017), *no appl. perm. appeal filed*.

Petitioner failed to show any improper relationship between the Trial Court Judge and any of the other attorneys involved in these cases. Rather, Petitioner asserted that because the Trial Court Judge simply knew other attorneys and because the Trial Court Judge, the previous judge, and some of the attorneys are members of the same bar association that this somehow created an appearance of impropriety. If a judge's membership in a local bar association along with other attorneys who might practice before the trial court were, in and of itself, grounds for recusal, then recusal would be required in nearly every trial court case in the State. Furthermore, we note that although Petitioner's attorney may not be a current member of the local bar association, nothing in the record suggests that he could not join, or re-join, said bar association, which would put him on the same footing he alleges that other attorneys enjoy. This issue is without merit.

Petitioner also alleges that the Trial Court Judge engaged in improper *ex parte* communication with another party. This Court discussed *ex parte* communications in *Clemons v. Nesmith* stating:

> As an initial matter, we note that communications with a judge outside the presence of both parties are generally prohibited by the Code of Judicial Conduct. Canon 2.9(A) states that a judge shall not "initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding." Tenn. Sup. Ct. R. 10, Canon 2.9(A) (describing certain exceptions, such as scheduling or administrative issues). As the comments to Canon 2.9 explain: "To the extent reasonably possible, all parties or their lawyers shall be included in communications with a judge." *Id.* at Canon 2.9, cmt. 1. Furthermore: "The proscription against communications concerning a proceeding includes communications with lawyers, law teachers, and other persons who are not participants in the proceeding, except to the limited extent permitted by this Rule." *Id.* at Canon 2.9, cmt. 3. If, however, "a judge receives an unauthorized ex parte communication bearing upon the substance of a matter," then "the judge shall make provision promptly to notify the parties of the substance of the communication and provide the parties with an opportunity to respond." Tenn. Sup. Ct. R. 10, Canon 2.9(B). As the above rules suggest, only those communications "concerning a pending or impending proceeding" or "bearing upon the substance of a matter" are prohibited by the Code of Judicial Conduct. *See* Tenn. Sup. Ct. R. 10, Canons 2.9(A)–(B). Additionally, an ex parte communication will only serve as an appropriate ground for the recusal of a trial judge "where it creates an appearance of partiality or prejudice against a party so as to call into question the integrity of the judicial process." *Runyon v. Runyon*, No. W201302651–COA–T10B–CV, 2014 WL 1285729, at *9 (Tenn. Ct. App. Mar. 31, 2014) (citing *Malmquist v. Malmquist*, 415 S.W.3d 826, 839–40 (Tenn. Ct. App. 2011).

*Clemons*, 2017 WL 480705, at *7.

With regard to the allegation concerning *ex parte* communication, the Trial Court specifically found and held in its July 19, 2019 order:

> As to allegations of ex parte communication, the clerks are the buffer between the litigants, lawyers, and the judges. Daily, Clerks handle communications from those individuals. It is their responsibility, initially, to ensure that docketing and scheduling matters are handled and the court is notified, where appropriate. This court does state that it has no recall of

having received any out of court communications from any of the pro se litigants. The particular communication at issue was discussed openly in court. It involved reasons why one of the parties would not be present in court. All parties were apprised of the situation, discussing it on the record. In the motion, counsel for Petitioner states that the court "may" have received these communications (ex parte). No proof was offered to evidence that the court was in receipt of the communication. This allegation is not a basis for recusal.

Petitioner failed to show that the Trial Court engaged in *ex parte* communication with another party and further failed to show that the alleged communication created an appearance of impropriety or prejudice, which would call into question the integrity of the judicial process.

Finally, Petitioner claims that estate case and the issues surrounding accountings in the conservatorship case are somehow in limbo. We must point out that Petitioner filed not one, not two, but three motions for recusal. As the Rules of the Supreme Court provide: "While the motion is pending, the judge whose disqualification is sought shall make no further orders and take no further action on the case, except for good cause stated in which such action is taken." R. Sup. Ct. 10B, Canon 1.02. Petitioner's own actions have led to some of the delay in these matters. Furthermore, we note that the Trial Court stated that there are a number of attorneys involved in these matters, which makes scheduling matters much more difficult than if the case involved only two represented parties.

In her motion for recusal appeal, Petitioner has demonstrated no reason for recusal other than the fact that she is unhappy with a number of the rulings of the Trial Court. Such unhappiness is insufficient to justify recusal. Furthermore, Petitioner has proven no facts supporting recusal. Rather, Petitioner provides a number of unsubstantiated claims and arguments, most of which concern the merits of the underlying claim or actions taken by the previous trial court judge.

The Trial Court Judge in this case has no duty to recuse herself simply because Petitioner is dissatisfied with the rulings that have been made in the case. As this Court explained in *Duke v. Duke*:

"A trial judge's adverse rulings are not usually sufficient to establish bias." *State v. Cannon*, 254 S.W.3d 287, 308 (Tenn.2008). "Rulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification." *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). "If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartiality

issue for strategic advantage, which the courts frown upon." *Davis v. Liberty Mut. Ins. Co.,* 38 S.W.3d 560, 565 (Tenn.2001).

*Duke,* 398 S.W.3d at 671.

"[A] judge should not decide to recuse unless a recusal is truly called for under the circumstances." *Rose v. Cookeville Reg'l Med. Ctr.,* No M2007-02368-COA-R3-CV, 2008 WL 2078056, *2 (Tenn. Ct. App. May 14, 2008), *no appl. perm. appeal filed.* This is true because "'[a] judge has as much of a duty not to recuse himself absent a factual basis for doing so as he does to step aside when recusal is warranted.'" *Id.* at *2 (quoting *Mass v. McClenahan,* No. 93 Civ. 3290 (JSM), 1995 WL 106106, *1 (S.D.N.Y. Mar. 9, 1995)). Recusal based upon an asserted appearance of bias or prejudice "is appropriate only if the facts provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality." *Id.* at *2 (quoting *In Re United States,* 666 F.2d 690, 695 (1st Cir. 1981)).

Petitioner has failed to produce "evidence that would prompt a reasonable, disinterested person to believe that the [Trial Court Judge's] impartiality might reasonably be questioned." *Neamtu,* 2019 WL 2849432, at *3 (quoting *In re Samuel P.,* No. W2016-01592-COA-T10B-CV, 2016 WL 4547543, at *2 (Tenn. Ct. App. Aug. 31, 2016), *no appl. perm. appeal filed*). As such, we find no error in the Trial Court's orders denying recusal. Petitioner's motion to recuse is DENIED. The costs of this appeal are taxed to Petitioner, for which execution may issue. This case is remanded for further proceedings.

_____
JOHN W. MCCLARTY, JUDGE